## BOWLES v. CHICAGO CARTAGE CO.
### No. 44 C 422.

District Court, N. D. Illinois, E. D.
Jan. 16, 1946.

David London, George Moncharch, Albert M. Dreyer and William W. Kapell, all of Washington, D. C., and George E. Leonard, of Chicago, Ill., for plaintiff.

Thomas Dodd Healy and William B. Crawford, both of Chicago, Ill., for defendant.

SULLIVAN, District Judge.

This is an action against the Chicago Cartage Company by the Administrator under Section 205(a) (c) and (e) of the Emergency Price Control Act of 1942, 50 U.S.C. A. Appendix, § 925(a) (c) and (e).

The case comes up now upon the complaint, answer and stipulation of facts, in which stipulation it is agreed, among other things, that the court shall be asked to determine first the question of whether defendant's operations, in whole or in part, are subject to the Emergency Price Control Act, as amended, and its applicable regulations, especially 7 F. R. 3153; the amount of damages which plaintiff might recover to be deferred until this first question has been determined.

Count 1 of the complaint sets out that in plaintiff's judgment the defendant has engaged in acts and practices which constitute violations of Section 4(a) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A.Appendix, § 904 in that it has violated the General Maximum Price Regulation 7 F. R. 3153, as amended and supplemented. That jurisdiction is conferred upon this court by Section 205(c) of the Act. That defendant is an Illinois corporation having its principal office and place of business at 2100 South Throop Street, Chicago, Illinois. That on March 1, 1942, and at all times subsequent thereto defendant has been engaged in the cartage business in and about Chicago, Illinois, and has hauled merchandise for divers persons, firms and corporations at rates not subject to regulation by any state or other regulatory body or officer other than plaintiff, which rates are fixed, without reference to any generally ap-

plicable schedule, by individual contract with persons, firms and corporations for which hauling and cartage services have been performed. The complaint alleges that defendant's business is subject to the control of General Maximum Price Regulation No. 7 F. R. 3153, issued by the Administrator pursuant to the provisions of the Emergency Price Control Act, and that since July 1, 1943, defendant has charged and received for its transportation services prices in excess of the maximum price permitted under the same. That defendant was so notified, but that notwithstanding said notice it continued to charge such rates for its services.

Count II reasserts the allegations of Count I and seeks treble damages under Section 205(c) and (e) of the Act, for the violation of Section 4(a), and an injunction to restrain defendant from continuing to charge rates in excess of the established maximum rate.

Defendant answers that it has been engaged in the transportation of commodities for the general public both in interstate and intrastate commerce as a common carrier by motor vehicle at rates which are subject to state and federal regulation other than regulation by plaintiff, and as such it comes within the exemption of Section 302(c) (2) of the Emergency Price Control Act of 1942, as amended, and revised Supplementary Regulations 11 to the General Maximum Price Regulation, Amendment 60. The exemption provisions of Sec. 302(c) (2), 50 U.S.C.A.Appendix, § 942 (c) (2) are as follows: "Provided, That nothing in this Act shall be construed to authorize the regulation of (1) * * *, or (2) rates charged by any common carrier or other public utility." The answer denies that plaintiff has the right to bring an action for treble damages under Section 205(e) of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 925 (e), or that plaintiff is entitled to judgment in any amount.

From the stipulation of facts, it appears that defendant is in the business of transporting goods and merchandise for hire. That its equipment consists of trucks, tractors and trailers, and that it maintains services known as pick-up and delivery of merchandise for railroads, consisting of picking up for railroads coming into Chicago merchandise routed over such railroads, and delivering merchandise coming into Chicago over such railroads to the ultimate consumer; steady house service, consisting of furnishing necessary labor and vehicles to perform a prescribed part of shippers transportation service; and general hauling, consisting of the delivery of general commodities for shippers to and from railroad, and from one establishment to another establishment. That defendant holds a certificate of Public Convenience and Necessity as a common carrier by motor vehicle of general commodities in interstate commerce, issued on September 20, 1943, by the Interstate Commerce Commission, and has a tariff on file with the Commission for transportation service. Defendant also holds a certificate of Public Convenience and Necessity as a "local carrier" under the provisions of the Illinois Truck Act, issued June 16, 1941; and it is also licensed by the City of Chicago to "engage in the business of a public carrier."

Plaintiff agrees that as to its general hauling business defendant is a common carrier and not subject to regulations under the Emergency Price Control Act, but urges that while it may be a common carrier with respect to that phase of its business, it is not a common carrier with regard to the other phases. That its steady house service and pick-up and delivery of merchandise for railroads are not common carrier operations, and consequently as to such operations defendant is subject to control under the Emergency Price Control Act. That as a basis for the steady house service, defendant has entered into contracts with shippers to serve them for a definite period of time at a rate which is agreed upon by bargaining between them, and therefore this type of business is clearly that of a private carrier, because it lacks the one element requisite to making it a common carrier operation, that is the holding out by the carrier that it will serve the public generally.

Defendant urges that the stipulation shows that it has solicited business by advertisement, by listings in the classified telephone directory, by personal contacts and other avenues of solicitation, including

published tariffs of the Cartage Exchange, which it insists is a holding out that it, will serve the public generally.

■ Every undertaking to transport merchandise for hire is under some form of contract, usually a bill of lading, and the mere existence of contracts between the Cartage Company and the shippers does not exclude the common carrier status if the transportation services are offered to the public generally. Nothing has been called to my attention to prove that defendant has at any time refused to perform transportation services for any one who has applied for it.

Plaintiff urges that defendant performs a specialized transportation service for its contract customers only, which it does not hold out to the public generally.

In Alton Railroad Co. v. United States, 315 U.S. 15, 62 S.Ct. 432, 434, 86 L.Ed. 586, one Fleming was granted a Certificate of Public Convenience and Necessity as a common carrier under the so-called "grandfather clause" of the Motor Carrier Act of 1935. He performed only the highly specialized "driveaway service of new automotive vehicles * * * from the factories * * * to dealers" in several states: i. e., he contracted to haul for automobile manufacturers, who alone needed a specialized service. The Interstate Commerce Commission ruled that this was a common carrier service, and in upholding this ruling the Supreme Court said: "Fleming's service was confined to deliveries at very few points in several states due to the fact that he was furnishing a highly specialized transportation service from manufacturers to dealers and distributors. * * * Fleming held his services out to the public generally as a common carrier and operated as such; and he held himself out to transport by the driveaway method between any points in the states for which application was made."

With respect to the transportation service rendered by defendant and known as "pick-up and delivery service" the administrator insists that it is not one which is rendered to the public generally or indiscriminately, but that like steady house service is a specialized service. The pick-up

and delivery service of railroad freight by motor trucks has always been held to be an integral part of a common carrier service. In United States v. N. E. Rosenblum Truck Lines, 315 U.S. 50, 62 S.Ct. 445, 447, 86 L. Ed. 671, the Supreme Court reversed a ruling by the lower court that a trucking company was a "contract carrier" with respect to "grandfather rights" under the Motor Carrier Act of 1935, for the "pick-up and delivery service" rendered to railroads, the court saying: "In any event the evidence clearly shows that on the critical date, and from then until February 1936, appellees helped the common carriers move their overflow freight and, as to each job, were an integral part of a single common carrier service offered to the public by the common carrier for whom they hauled."

An answer to the Administrator's arguments on both "pick-up and delivery" and "steady house" service may be found in the terminal carrier cases where the Supreme Court determined the rights and duties of the terminal carriers under various phases of federal legislation which applied to common carriers engaged in interstate commerce. Terminal carriers were those who rendered transportation, storage and delivery service to railroads at the terminal endings of the railroad lines. Some were by truck, others by rail or boat. In United States v. Brooklyn Eastern District Terminal, 249 U.S. 296, 39 S.Ct. 283, 285, 63 L.Ed. 613, 6 A.L.R. 527, a navigation corporation was engaged in conducting the usual terminal transportation services of interstate freight for a number of interstate railroads, which services were rendered pursuant to contracts with the railroads, and its charges not made to the public. In deciding the case the Supreme Court said: "* * * But the Terminal contends that it is not subject to the provisions of the statute, since it is not incorporated as a common carrier and does not hold itself out as such; does not file tariffs; and does not undertake to transport property for all who may apply to have their goods transported; but merely transports as agent such freight as is delivered to it by or for those carriers, and those only, with whom it has elected to make special contracts; and that, under these contracts it performs

for the railroads, and not for the public, a part of the whole carriage which they, as common carriers, have undertaken with the shippers to perform."

The Court held the Terminal Company to be a common carrier, saying: "True, the service is performed by the Terminal under contracts with the railroad companies as agent for them, and not on its own account. But a common carrier does not cease to be such merely because the services which it renders to the public are performed as agent for another."

Under the original Motor Carrier Act of 1935, there arose the question of whether a motor carrier in the performance of "pick-up and delivery" service for a railroad was entitled to a certificate as a contract carrier by motor vehicle, or as a common carrier by motor vehicle. A motor carrier performing exclusively the pick-up and delivery service for one railroad operating in and near New York contended that in the performance of such work by it, it was a contract carrier by motor vehicle and entitled to a permit as such. In determining this question, in the case of Scott Bros., Inc., Collection and Delivery Service, No. MC2744–1 Federal Carrier Case CCH, page 165, the Commission said: "Its status as such however would be that of a common carrier by railroad rather than a common carrier by motor vehicle, because the service in which it would engage is clearly an integral part of railroad common carrier service under Section 1, Sub. 3, of Part I as the Commission and the Courts have decided."

In view of this decision it seems apparent that defendant, in performing the pick-up and delivery service, is performing a common carrier service and consequently it is within the exemption extended "any * * * common carrier." The Transportation Act of 1940, Part II, Motor Carriers, Sec. 202 (c) (2), 49 U.S.C.A. § 302 (c) (2) provides: "Notwithstanding any provision of this section or of section 203, the provisions of this [part], except the provisions of section 204 relative to qualifications and maximum hours of service of employees and safety of operation and equipment, shall not apply—(1) * * * (2) to transportation by motor vehicle by

any person (whether as agent or under a contractual arrangement) for a common carrier by railroad subject to [part] 1 * * *, but such transportation shall be considered to be performed by such (railroad) carrier * * * as part of, and shall be regulated in the same manner as, the transportation by railroad * * * transportation or service, to which such services are incidental."

This service likewise is expressly designated as "common carrier" in the Transportation Act of 1940, amending Part I of the Interstate Commerce Act, Sec. 1 (3) (a), 49 U.S.C.A. § 1 (3) (a) as follows: "The term 'common carrier' as used in this [part] shall include * * *. The term 'railroad' as used in this [part] shall include * * * and terminal facilities of every kind used or necessary in the transportation of the persons or property designated herein, * * * used or necessary in the transportation or delivery of any such property. * * *"

This section of Part I construed in connection with Par. 202 (c) (2) supra, both incorporated in Part I and Part II of the Interstate Commerce Act by virtue of the Transportation Act of 1940, amending both parts, conclusively demonstrates that the performance of "pick-up and delivery" service for railroads is a common carrier service subject to regulation under the Interstate Commerce Act. The stipulation of facts shows that the railroads for whom defendant performs such "pick-up and delivery" service all hold certificates as common carriers by railroad under Part I of the Interstate Commerce Act. I do not believe that plaintiff has proved the allegation in its complaint that the rates charged for this service are not subject to control by any state or other regulatory body, inasmuch as such rates seem to be clearly within the control and regulation of the Interstate Commerce Commission.

The stipulation shows that defendant was licensed in 1944 and 1945 under the Public Cartage Ordinance of the City of Chicago. This City Ordinance was passed in accordance with the provisions of the Cities and Villages Act of Illinois, Chap. 24, Smith-Hurd R.S. art. 23, § 51, which grants unto certain cities the power "to

license, tax, and regulate hack-men, dray-men, omnibus drivers, carters, cabmen, porters, expressmen, and other pursuing like occupations, and to prescribe their compensation." Defendant's license under the City Ordinance requires it to serve the general public. Defendant has the status of a common carrier to serve the general public, and when it applies for and receives the various certificates and licenses required under the State and City laws of a common carrier it is actually undertaking to and does in fact undertake within the State and City to serve the general public.

Defendant also holds a certificate of Public Convenience and Necessity from the State of Illinois, issued pursuant to a statute of the State of Illinois known as the Illinois Truck Act, Chap. 95½, Smith-Hurd R. S., § 240 et seq. Under Sec. 6(a) of the Illinois Truck Act, Smith-Hurd R.S. Chap. 95½, § 245, as prerequisite of engaging in the cartage of merchandise within the State of Illinois for hire, a Certificate of Public Convenience and Necessity must first be secured from the State. Section 241 (j) thus defines a local carrier: "'local carrier' means any person * * * who or which undertakes, whether directly or by lease or other arrangement, to transport property, or any class or classes of property, by truck and for compensation, for the general public in intrastate commerce."

By such statutory definition a local carrier under the Illinois Statute is synonymous with the definition of a common carrier or cartman under the common law, as announced in the decisions of the Illinois Courts and the United States Supreme Court. The Illinois Truck Act in fact regulates defendant as a common carrier. Under the policy of the State statute the cartage business is termed a business affected with a public interest. It is obliged to hold itself out to the public generally. It must have a franchise in the form of a certificate declaring that public convenience and necessity require such operation. It cannot dispose of its business without approval of the state. It is obliged to carry certain insurance for the protection of the public. It must comply with certain regulations as to safety of operation and hours of labor

for the protection of the public. It must carry designation as to names, weight, address, certificate number, etc., on its trucks. It must issue bills of lading prescribed by law. It must make certain reports in order to protect the public, and it is not free to contract away its liability as insurer which is imposed upon it as a common carrier. Smith-Hurd R.S. Chap. 95½, §§ 240 to 260. In issuing to defendant the certificate as a local carrier, the Department of Public Works found as a fact that defendant was and had been engaged in transporting merchandise for compensation for the general public. (Stip. Par. 9). I believe that defendant as to its pick-up and delivery service and its steady house service comes within the exemption of Sec. 302 (c) (2) of the Emergency Price Control Act of 1942, as amended, 50 U.S.C.A. Appendix, § 942(c) (2), and is therefore not subject to regulation under the Emergency Price Control Act.

I am of the opinion that defendant is engaged in the transportation of commodities for the general public both in interstate and intrastate commerce as a common carrier by motor vehicle at rates which are subject to State and Federal regulation other than plaintiff, and therefore that it is within the exemption of Sec. 302 (c) (2) of the Emergency Price Control Act and Revised Supplementary Regulations 11 to the General Price Regulation Amendment 50. Accordingly judgment is rendered for defendant.