159 F.2d 431 (1947)
COLLINS et al.
v.
FLEMING, Temporary Controls Administrator. HIRSCH
v.
SAME. MORRISON et al.
v.
SAME.
Nos. 352, 353, No. 357.
United States Emergency Court of Appeals.
Heard October 31, 1946.
Decided January 2, 1947.
Petition for Rehearing Filed January 16, 1947.
Rehearing Denied January 30, 1947.
Writ of Certiorari Denied April 7, 1947.
*432 Mac Asbill, of Washington, D. C. (John K. Skaggs, Jr., and Allen P. Dodd, Sr., both of Louisville, Ky., on the brief), for complainants Collins et al.
Frederic P. Lee, of Washington, D. C., (J. Verser Conner, of Louisville, Ky., on the brief), for complainant Hirsch.
Mac Asbill, of Washington, D. C. (Irvin Marcus, of Louisville, Ky., on the brief), for complainants Morrison et al.
Carl A. Auerbach, Associate Gen. Counsel, Office of Price Administration, of Washington, D. C. (Richard H. Field, Gen. Counsel, William R. Ming, Jr., Chief, Court Review Price Branch, and James A. Durham and Irving J. Helman, Attys., all of Office of Price Administration, all of Washington, D. C., on the brief), for respondent in all three cases.
Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
Heard at Washington October 31, 1946.
Writ of Certiorari Denied April 7, 1947. See 67 S.Ct. 1094.
MARIS, Chief Judge.
The complainants in these three cases, Nos. 352, 353 and 357, which have been consolidated for hearing, seek a declaratory judgment that Order No. 45 issued by the Price Administrator on June 13, 1945 under Section 1499.3(c) of the General Maximum Price Regulation as amended[1] was invalid. The facts out of which the controversy arises are stated in our opinion filed today in the case of Collins et al. v. Fleming, Temporary Controls Administrator, Em.App., 159 F.2d 426, and need not be repeated here. Suffice it to say that the present complainants are all former stockholders of Cummins Distilleries Corporation and are defendants in a suit for treble damages instituted by the Price Administrator on May 27, 1943 in the United States District Court for the Western District of Kentucky by reason of their sale between January 4 and 9, 1943, through a stockholders' committee, at alleged overceiling prices of warehouse receipts covering a large quantity of whiskey which had belonged to the corporation prior to its dissolution on December 31, 1942.
In complaint No. 371, to which we have already referred and which is being decided today, the same complainants as are now before us in complaint No. 352 sought to have Maximum Price Regulation No. 193[2] declared inapplicable to the sales mentioned or, if applicable, then invalid as applied to them. In that case we have held MPR 193 to be both applicable to the sales in question and valid as applied to them. The discussion of those questions in the opinion filed in that case will, therefore, not be repeated here. We accordingly proceed to the consideration of the issue which the cases now before us present as to the validity of Order No. 45. In order to understand that issue we must first have in mind the relationship of Order No. 45 to MPR 193 and to the GMPR and what the Price Administrator sought to accomplish by the order.
Prior to the issuance of MPR 193 on August 1, 1942 sales of domestic distilled spirits were covered by the GMPR. MPR 193 was issued primarily to provide certain *433 upward price adjustments for increased taxes and costs and it continued the general freeze date pricing scheme of the GMPR. Specifically it provided three alternative pricing methods. Section 1420.13(a) of MPR 193 provided that the seller's maximum price should be the price established under Section 1499.2(a) of the GMPR plus certain additions to cover increased taxes and costs. Section 1499.2(a) of the GMPR, to which reference was thus made, established the maximum price in terms of the highest price charged by the individual seller during March, 1942. Section 1499.2 (b) of the GMPR provided that if a seller had made no sales in March, 1942 his maximum price would be the highest price charged during March, 1942 by the "most closely competitive seller of the same class" for the same or most similar commodity. Following the same pattern Section 1420.13 (b) of MPR 193 provided as an alternative that if a maximum price could not be determined for a seller under Section 1420.13(a) it should be the maximum price established under that section for the "most closely competitive seller of the same class" for such domestic distilled spirits. Finally as a third pricing method in case neither Section 1420.13(a) nor Section 1420.13(b) could be applied MPR 193 provided by Section 1420.13(c) that "the seller's maximum price for such domestic distilled spirits shall be determined in accordance with § 1499.3 of the General Maximum Price Regulation."
Section 1499.3 of the GMPR as amended and in force in January 1943 was as follows:
"1499.3 Maximum prices for commodities and services which cannot be priced under § 1499.2. The seller's maximum price for a commodity or service which cannot be priced under § 1499.2 of this General Maximum Price Regulation shall be a maximum price in line with the level of maximum prices established by this General Maximum Price Regulation. Such price shall be determined by the seller in accordance with the following procedures:
"(a) In the case of a `sale at wholesale or retail' of a commodity, the seller (1) shall select from the same general classification and price range as the commodity being priced under this section, the comparable commodity for which a maximum price is established under section 2 of this Regulation and of which the seller delivered the largest number of units during March 1942; (2) shall divide his maximum price for that commodity by his `replacement cost' of that commodity; and (3) shall multiply the percentage so obtained by the cost to him of the commodity being priced under this paragraph. The resulting figure shall be the maximum price of the commodity being priced. Within ten days after determining such maximum price under this paragraph, the seller shall report such price to the `appropriate field office of the Office of Price Administration' upon a form, duly filled out, copied from the form contained in Appendix A of this Regulation. The price so reported shall be subject to adjustment at any time by the Office of Price Administration.
"(b) In the case of a sale other than at wholesale or retail of a commodity, the maximum price shall be a price determined by the seller after specific authorization from the Office of Price Administration. A seller who seeks an authorization to determine a maximum price under the provisions of this paragraph shall file with the Office of Price Administration in Washington, D. C., an application setting forth (1) a description in detail of the commodity for which a maximum price is sought; and (2) a statement of the facts which differentiate such commodity from other commodities delivered during March, 1942 by such seller and by other competitive sellers of the same class. Such authorization will be given in the form of an order prescribing a method of determining the maximum price for the applicant or for sellers of the commodity generally, including purchasers for resale, or for a class of such sellers.
"(c) In the case of a sale at wholesale or retail of a commodity which cannot be priced under paragraph (a) of this section, the maximum price shall be a price determined by the seller after specific authorization from the Office of Price Administration or any duly authorized officer thereof. *434 A seller who seeks an authorization to determine a maximum price under the provisions of this paragraph shall file with the regional office of the Office of Price Administration for the region in which his principal place of business is located an application setting forth (1) a description of the commodity or commodities for which a maximum price is sought; (2) a statement of the reasons why such commodity or commodities cannot be priced under § 1499.2 or § 1499.3(a) of this General Maximum Price Regulation; and (3) any other facts which the seller wishes to submit in support of the application. The seller shall also submit such additional pertinent information as the regional office may require. Such authorization will be given in the form of an order prescribing a method of determining the maximum price.
"(d) In the case of a sale of a commodity the price for which includes the supply of a service of substantial value and which cannot be priced under paragraph (a) of this section, or in the case of a sale of a service, the maximum price shall be a price determined by the seller by applying the first applicable pricing method of the pricing methods stated in § 1499.102 of Maximum Price Regulation No. 165, as amended."
Since the complainants are not alleged to have made any sales of whiskey in bulk at any other time than January, 1943 it would seem obvious that their maximum prices for the sales made in that month could not have been determined on the basis of their March, 1942 prices, the first pricing method prescribed by MPR 193. Accordingly the Price Administrator was relegated to the second or third pricing methods for determining the complainants' ceiling prices. The second pricing method, that which adopts the maximum prices of their most closely competitive sellers, was originally invoked by the Price Administrator as the basis for the damages claimed in the treble-damages suit now pending. Apparently fearful, however, that he might be unable to establish the basis for determining the complainants' maximum prices by this second method, the Price Administrator determined, long after the treble-damages suit was begun, to issue an order under Section 1499.3(c) of the GMPR determining for the complainants maximum prices for their January, 1943 sales in line with the level of maximum prices established by MPR 193. This he did by Order No. 45,[3] the order here under attack. That order was as follows:
"For the reasons set forth in the opinion issued simultaneously herewith and filed with the Division of the Federal Register, and pursuant to § 1499.3(c) of the General Maximum Price Regulation; It is Ordered:
"(a) (1) The maximum price for sales of bulk domestic whiskey, evidenced by warehouse receipt or otherwise, by the persons named in paragraph (b) hereof, for sales made during the month of January, 1943 (in the event that any such persons made such sales), shall be the maximum price established by that person in accordance with § 1420.13(a) or (b) of Maximum Price Regulation 193.
"(2) In the event that any person named in paragraph (b) hereof is unable to establish a maximum price for his sales of bulk domestic whiskey in accordance with subparagraph (1) above, the maximum price for such sales during the month of January 1943 shall be the appropriate amount set forth in § 1420.13(g) of Maximum Price Regulation 193 in accordance with the age of the whiskey being priced.
"(3) Section 1420.10(a) (5), (6) and (7) and § 1420.13(e), (f), (g), (h) and (i) of Maximum Price Regulation 193, as in effect on February 3, 1943, are incorporated herein by reference.
"(b) This order shall apply to all sales of bulk domestic whiskey made during the month of January 1943 by the following persons, in the event that any such persons made such sales:
"A. J. Cummins, W. M. Morrison, Louis J. Newman, Earl J. Mock, individually and as officers of the Cummins Distilleries Corporation.
"A. J. Cummins, W. M. Morrison, Louis J. Newman, Roy St. Lewis, Hiram Neuwoehner, *435 John W. Smart, individually and as directors of Cummins Distilleries Corporation.
"W. M. Morrison, Max Waldman, William Wagner, individually and as the Cummins Stockholders' Distribution Committee.
"Morrel D. Klein, and Robert R. Appel, individually and d/b/a Klein and Appel.
"John W. Smart and William Wagner, individually and d/b/a Smart and Wagner.
"Allan L. Carter, Jr., C. Prevost Boyce, Henry C. Evans, William T. Childs, C. Newton Kidd, Milton S. Trost, Robert S. Lansburgh, William K. Barclay, Jr., Leroy A. Wilbur, Edward J. Armstrong, individually and d/b/a Stein Bros. and Boyce.
"Farmers National Bank of Lebanon, Kentucky, Executor of the estate of George W. Dant.
"G. C. Collins, Jr., Christine Hunt Collins, Louis J. Newman, Lillian Newman, W. M. Morrison, Marcella W. Morrison, David J. Williams, T. E. Spragens, J. D. Clark, D. P. Newell, Mrs. Jessie S. Miner, James Burt Miner, Mrs. Anna Bell Bickett, Adolph F. Rupp, Phil. E. Lahman, Mrs. Gladys G. Minton, Clara McCoy, John McCoy, Stanley McCoy, Mary Lee Hiner, Hiram Neuwoehner, Edwin C. Willis, R. J. Haury, A. J. Cummins, Yancey Lee Cummins, Roy St. Lewis, Edward J. Miller, Adolph Hirsch, Russell Ebinger, Adolph H. Gossmahn, Mrs. Marcellus G. Mature.
"(c) This order may be revoked or amended by the Price Administrator at any time.
"(d) This order shall become effective immediately.
"(e) Issued this 13th day of June, 1945."
It will be observed that paragraph (a) (2) of the foregoing order which provides for the third alternative or in-line pricing method in case the first two methods provided for in paragraph (a) (1) are not applicable, refers to the appropriate amount set forth in Section 1420.13(g) of MPR 193. Subsection (g) was added to Section 1420.13 of MPR 193 by amendment No. 4 issued February 3, 1943[4] and is as follows:
"(g) Table of maximum prices for domestic whiskey in bulk.

 Age Maximum
 prices per
 More than Not more than original
 Months Months proof gallon
 2 .69
 2 4 .73
 4 6 .77
 6 8 .81
 8 10 .85
 10 12 .89
 12 14 .93
 14 16 .97
 16 18 1.01
 18 21 1.07
 21 24 1.13
 24 27 1.19
 27 30 1.25
 30 33 1.31
 33 36 1.36
 36 39 1.41
 39 42 1.46
 42 45 1.51
 45 48 1.56
 48 51 1.61
 51 54 1.65
 54 57 1.69
 57 60 1.72
 60 63 1.75
 63 66 1.78
 66 69 1.81
 69 72 1.84
 72 75 1.87
 75 78 1.90
 78 81 1.93
 81 84 1.96
 84 90 1.98
 90 2.00

"(1) Determination of age of whiskey. The age of the whiskey to be priced hereunder shall be calculated by determining the number of full calendar months intervening between the date of entry into bond (as indicated on the warehouse receipt) to and including the date of sale. A full calender month shall be computed from the date of the month of original entry into bond to, but not including the corresponding date of the following month, *436 and in like manner from such corresponding date for each succeeding month.
"(2) New or increased State or local taxes. Sellers may add to the amounts set forth in paragraph (g) the amount of any new tax or increase in an existing tax incident to the sale, processing or use of domestic whiskey in bulk imposed upon the seller or any prior vendor after February 2, 1943 with respect to the particular quantity of such whiskey to be priced hereunder by any statute or ordinance of any State or subdivision thereof: Provided, That the amount of such new or increased tax has been paid or shall have accrued and be payable by the seller to the proper taxing authorities or to any prior vendor."
The opinion of the Price Administrator accompanying Order No. 45 and setting forth his reasons for issuing it was as follows:
"There is now pending and undetermined in the United States District Court for the Western District of Kentucky an action entitled Chester Bowles, Price Administrator, Office of Price Administration, Plaintiff, against Cummins Distilleries Corporation, the persons named in paragraph (b) of the accompanying order and others, defendants. The Price Administrator claims in said action that Cummins Distilleries Corporation or in the alternative, the persons named in the accompanying order or some of them, sold bulk whiskey, evidenced by warehouse receipts or otherwise, at prices in excess of the maximum prices for sales of such commodities established by applicable regulations of the Office of Price Administration. The Price Administrator also claims in the said action that some or all of the persons named in the accompanying order were required to establish their maximum prices for sales of bulk domestic whiskey by reference to their most closely competitive sellers. Some of the defendants, however, deny that there was any most closely competitive seller on the basis of whose sales maximum prices could be established. If that should be found to be the case, then the sellers would have been required to establish their maximum prices by application under Section 1420.13(c) of Maximum Price Regulation 193. However, none of the persons named in said order has applied for the establishment of a maximum price under that section.
"The accompanying order is not based on any finding that the persons named therein did, in fact, make any sale, or that the sales involved in the litigation are not governed by the prices of the most closely competitive sellers. These issues have been tendered in the litigation and should appropriately be determined by the District Court.
"The accompanying order will be applicable only in the event that the District Court finds that the persons named in that order, or any of them, were the sellers of the bulk whiskey involved in the litigation, and in the event that the District Court also finds that maximum prices for sales by such persons, or any of them, could not be established under Section 1420.13(a) or (b) of Maximum Price Regulation 193.
"The maximum prices established by the accompanying order generally reflect the highest prices prevailing in March 1942 for bulk domestic whiskey and make appropriate allowance for storage and carrying charges. In the opinion of the Price Administrator, those prices are generally fair and equitable in their application to all types of domestic whiskey.
"Issued this 13th day of June, 1945."
Having thus seen the setting in which Order No. 45 was issued and the reasons given by the Price Administrator for issuing it we turn to the question whether in issuing it he exceeded his powers. There are two views which may be taken of Order No. 45 in the light of Section 1499.3 of the GMPR under which it purports to have been issued. The first is that Section 1499.3 itself definitely established maximum prices for the complainants and that Order No. 45 merely specified in dollars and cents what the prices computed under that section were. The second view is that Section 1499.3 did not itself establish maximum prices but merely indicated the basis upon which such prices should later be established and that it was Order *437 No. 45 which for the first time actually established them for the complainants.
We agree with the Price Administrator that the first view is the proper and indeed the only tenable one. The first and basic provision of Section 1499.3 of the GMPR is, as we have seen, that the "seller's maximum price for a commodity * * * shall be a maximum price in line with the level of maximum prices established by this * * * Regulation." Here is laid down a definite standard which requires only the ascertainment of facts for the determination of the maximum price for a particular commodity. For example, once the maximum prices established by MPR 193 for the sale of domestic distilled spirits at wholesale are shown the determination of a price in line with the level of those prices can present no great difficulty. It is the sort of problem with which courts are constantly required to deal.
The complainants, however, point to paragraphs (a), (b), (c) and (d) of Section 1499.3, and argue that until the procedure outlined in one of these paragraphs is invoked no maximum price comes into existence. We see no merit in this contention. The second sentence of Section 1499.3 is the one which introduces paragraphs (a), (b), (c) and (d). It reads: "Such price shall be determined by the seller in accordance with the following procedures:". We thus see that paragraphs (a), (b), (c) and (d) were included in Section 1499.3 to provide procedure whereby a seller might himself make a definite determination of the inline maximum price which the regulation imposed upon him before actually making a sale. By doing so he would not have to take the risk of a subsequent judicial determination that his sale price was above ceiling if an enforcement suit should be brought against him. If paragraph (a) was applicable he could secure such assurance by computing his price as therein directed and reporting it to the Office of Price Administration. If either paragraph (b) or (c) was applicable he could secure the same assurance by computing his price in accordance with a specific method of determination given to him by the Office of Price Administration, upon his request and after he had given the office the facts. If, however, a seller subject to Section 1499.3 did not avail himself of the opportunity to make a specific determination of his maximum price by following the procedure outlined in the appropriate paragraph of that section but nevertheless proceeded to sell his commodity he was still required by Section 1499.3 to sell it at a price which was no higher than the level of maximum prices established by the applicable regulation for that commodity.
In the present case the complainants did not attempt to determine their maximum prices under Section 1499.3(c). Instead they sold their whiskey at prices which the Price Administrator in the treble-damages suit contends were in excess of the maximum prices established by MPR 193 for their most closely competitive sellers of the same class, if any, and in any event were higher than the level of maximum prices established by that regulation for their commodity. Having thus failed to take advantage of the procedure which was open to them for obtaining a prior precise determination of their maximum prices they have left open in the enforcement suit in the district court the determination of their proper maximum prices under the regulation.
We thus come to the final question in the case. Is the determination of the complainants' in-line maximum prices for the sales which they made in January, 1943 and which are involved in the treble-damages suit in the United States District Court for the Western District of Kentucky to be made by that court in adjudicating that suit or is the determination of those prices which the Price Administrator has made by Order No. 45 valid and, therefore, binding on the district court under Section 204(d) of the Emergency Price Control Act?[5] To put it another way, may the Price Administrator by an order directed solely to *438 that end determine the ceiling prices applicable to particular past sales which are the subject of an enforcement suit brought by him in a district court where one of the issues before the court is the amount of the proper ceiling prices applicable to the sales?
As we have seen, Order No. 45 was directed solely to the past. Its object was to determine exactly for the purpose of computing damages in the enforcement suit the maximum prices for complainants' sales which Section 1499.3 of the GMPR (as incorporated by reference in Section 1420.13(c) of MPR 193) imposed upon them. It must be remembered that the order was not made on complainants' application as contemplated by Section 1499.3(c). If it had been, a different situation might be presented. Here, however, the complainants did not request the Price Administrator to act but left the question of their maximum prices wholly open for judicial determination. The sole purpose of the order, therefore, was to adjudicate a question which the Price Administrator by instituting the treble-damages suit, had himself previously committed to the district court. We think that the Price Administrator was without power to make a determination, through the medium of what purported to be a retroactive price order, of the question thus committed to the district court.
The price regulations and orders authorized to be issued by the Price Administrator under Section 2 of the act, 50 U.S.C.A. Appendix, § 902, and which are incontestable in the district courts under Section 204(d) are limited to those which will effectuate the purposes of the act. Order No. 45 did not effectuate any one of those purposes, however. Since its only object was to liquidate the damages in a pending suit between the Price Administrator and a group of alleged overceiling sellers it could only derive its authority from the act if one of the purposes of the act was to authorize the Price Administrator to decide issues of fact with respect to past transactions which he himself has already committed to a court for adjudication. We are satisfied that Congress had no such purpose in mind in passing the act and it is most doubtful whether Congress could have so provided if it had desired to do so. For, as we recently had occasion to say in Lee v. Fleming, Em.App.1946, 158 F.2d 984, "such action would not only appear to involve the usurpation of judicial power which is vested in the courts alone, but would also clearly be at war with the fundamental concept of due process of law that parties to controversies are entitled to have them determined by an impartial tribunal."
The Price Administrator justifies Order No. 45 by asserting that the rule laid down by the Supreme Court in Addison v. Holly Hill Fruit Products, Inc., 1944, 322 U.S. 607, 64 S.Ct. 1215, 1218, 88 L.Ed. 1488, 153 A.L.R. 1007, required him to issue it. The Addison case was an action for wages under the Fair Labor Standards Act, 29 U.S.C.A. § 201 et seq. That act exempts from its provisions persons employed, "within the area of prodution (as defined by the Administrator)," in canning agricultural commodities for market. The defense was that the plaintiffs' employees were within the exempted area of production as defined by the Administrator of the Wage and Hour Division. A majority of the Supreme Court, holding that the Administrator's definition of "area of production" was invalid, approved an order remanding the case to the district court "with instructions to hold it until the Administrator, by making a valid determination of the area with all deliberate speed, acts within the authority given him by Congress". The Price Administrator points out that this decision involved the issuance of an order which was to be applied retroactively to the determination of a pending lawsuit. So much may be conceded but here, we think, the analogy to our case ends.
In the Addison case the order in question involved a legislative problem, the appropriate boundaries of the "area of production," the determination of which Congress had expressly delegated to the Administrator of the Wage and Hour Division. It was not a matter which was open to or appropriate for adjudication by the courts. The determination of the area was, however, necessary before the plaintiffs' rights could be determined. Conceding that retroactive orders should be avoided as much as *439 possible, the Supreme Court nevertheless thought that the circumstances of the case were such as to make it unavoidable. No such dilemma is presented by the case now before us. The question to which Order No. 45 is directed, the level of maximum prices established by MPR 193 for bulk whiskey, is a factual one with which the district court is quite as competent to deal as is the Price Administrator. Indeed it is just the sort of problem with which courts are called upon to deal every day and for the solution of which the judicial process is designed. The question is not a legislative one nor has Congress committed it to the exclusive determination of the Price Administrator. On the contrary the Price Administrator himself has committed it to the district court by instituting the treble-damages suit in which it is a major issue. He is, therefore, obviously not in position to make such a disinterested determination of it as was the Administrator of the Wage and Hour Division of the question involved in the Addison case.
We think that similar considerations serve to distinguish the cases of General American Tank Car Corporation v. El Dorado Terminal Co., 1940, 308 U.S. 422, 60 S.Ct. 325, 84 L.Ed. 361, and El Dorado Oil Works v. United States, 1946, 66 S.Ct. 843, also relied on by the Price Administrator. For the reasons stated we conclude that Order No. 45 is not in accordance with law and is, therefore, invalid. It accordingly becomes unnecessary for us to discuss the other questions raised by the complainants.
A judgment will be entered declaring that Order No. 45 issued on June 13, 1945 under Section 1499.3(c) of the General Maximum Price Regulation was invalid from the date of its issuance.

On Petition for Rehearing
Before MARIS, Chief Judge, and MAGRUDER, McALLISTER, LINDLEY and LAWS, Judges.
MARIS, Chief Judge.
The Temporary Controls Administrator has filed a petition for rehearing of these cases. Two points raised in the petition will be discussed briefly.
The Administrator asserts that it does not clearly appear from the opinion whether the court held that Order No. 45 was not authorized by the regulation or whether the regulation was invalid to the extent that it authorized the order. We held that Order No. 45 was neither authorized by Section 1499.3(c) of the General Maximum Price Regulation, under which it purported to be issued, nor by Section 2 of the Emergency Price Control Act, 50 U.S.C.A. Appendix, § 902, which gives general authority to the Price Administrator to issue price orders, and that Order No. 45 was therefore invalid. We do not regard Section 1499.3(c) of the GMPR as authorizing or contemplating a retroactive price order of the character of Order No. 45 to be made by the Price Administrator in the absence of an application by a seller. Whether the regulation authorizes such an order to be made upon application of the seller is a question not before us.
The Administrator also asserts that our decision was based on the ground that Order No. 45 usurped the judicial power of the district court for the Western District of Kentucky and that this ground of objection was not raised in the protest proceedings. In so contending the Administrator misapprehends the ground of our decision. It was, as we have just stated, that the order was invalid because it was not authorized by the regulation or the act. Objections upon this ground were clearly stated in each of the protests.[1] It is true that we suggested that if the act had authorized such an order as Order No. 45 it might well have been unconstitutional as involving usurpation of judicial power but our conclusion was that Congress had no such purpose in mind in passing the act.
The petition for rehearing will be denied.
NOTES
[1] 7 F.R. 7093.
[2] 7 F.R. 6006.
[3] 10 F.R. 7206.
[4] 8 F.R. 1632.
[5] 50 U.S.C.A.Appendix, § 924(d).
[1] Collins protest, paragraphs 2g, 3f and 5. Hirsch protest, paragraphs 2(a) and 3. Morrison protest, paragrhps 2g, 3f and 5.