## ELECTROMATIC DISTRIBUTORS, Inc., et al. v. CLARK.

### No. 360.

United States Emergency Court of Appeals.

Heard at New York City March 7, 1947.

Decided June 17, 1947.

.Arthur G. Warner, of New York City, for complainants.

William R. Ming, Jr.; Associate Gen. Counsel, of Washington, D. C. (Carl A. Auerbach, Gen. Counsel, and Louis L. Rochmes, Atty., both of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

McALLISTER, Judge.

In 1942, complainant, Electromatic Distributors, Inc., had on hand 7,000 sets, or "kits," of radio parts. Because of orders of the War Production Board in that year limiting, and later prohibiting the manufacture of radios for civilian use, complainant was unable to build cabinets or cases for the parts, and thus complete the manufacture of the radios for sale to the public.

These kits had cost the complainant $8.12 each, and, after the War Production Board orders, in order to avoid a greater loss, complainant sold them to William Rodriguez, in Havana, Cuba, who agreed to sell the 7,000 kits and, from the proceeds, pay complainant the sum of $6 each. Rodriguez did not succeed in selling the kits, so a new corporation, Cuban-American Enterprises, S. A., hereinafter referred to as Cuban-American, was formed. The stockholders in the new company were the same as the three stockholders who owned all the stock of Electromatic, but the proportion of the stock in Cuban-American which each of the three owned differed considerably from the proportion which each owned in Electromatic. Thereafter, Rodriguez assigned the radio kits to Cuban-American.

At its factory in Havana, Cuban-American assembled the parts in radios having tropical condensers and wooden cabinets capable of withstanding tropical climate. About the time the radio sets were completed, the Cuban market suddenly became flooded with radio models of a similar type manufactured by other concerns, and Cuban-American was unable to sell its radios.

In the spring of 1943, Cuban-American applied for, and received, permission from the Cuban Government Board of Export Control to export the radios to the United States and to sell them to Electromatic Distributors, Inc. On July 31, 1943, 3,000 radios were sold to Electromatic for $69,000, or $23 each. Of this amount, $15,785.40, or $5.26 per radio, represented costs of transportation, freight, insurance, wharfage, clearance, Cuban export duties, and United States import duties. At the time of importation, the United States Customs Office required the radios to be marked: "Made in Cuba."

On February 17, 1944, Electromatic filed an application with the Office of Price Administration to establish its prices for these radios, under the Maximum Import Price Regulation. On May 5, 1944, the Administrator denied this application on the ground that this Regulation did not govern complainant's prices, but that its sales were subject to the provisions of Revised Price Schedule No. 83. He, therefore, issued Order No. 8, under Revised Price Schedule No. 83, fixing complainant's maximum prices at $17.03 per radio f.o.b. New York for sales to retailers, and $27.30 per radio for sales at retail. Electromatic Distributors, Inc. thereafter filed a protest on October 2, 1944, claiming that its prices should be governed by the Maximum Import Price Regulation instead of Revised Price Schedule No. 83. It may here be remarked that it is unnecessary to discuss the matters set forth in the complaint filed in this case by the copartner complainants doing business as Radio Traders, as orders have been subsequently entered by the Administrator revoking retroactively the previous orders which formed the basis of their protest and complaint.

The protest of Electromatic was referred to a Board of Review, which recommended denial of the protest. The Administrator thereafter denied the protest in June, 1945. Subsequently, on October 7, 1945, Electromatic filed its complaint in this court. On motion, the proceedings were remanded to the Administrator to revoke his order and re-open the protest proceedings. Thereafter, on the hearing of arguments, the Board of Review again recommended denial of the protest, and the protest of Electromatic was, on June 27, 1946, again denied by the Administrator. Subsequently, Electromatic Distributors, Inc. filed its complaint on July 25, 1946.

The controlling issue in this case is whether the maximum prices of the radios assembled and completed in Cuba, should be determined under Revised Price Schedule No. 83, or under the Maximum Import Price Regulation. It is conceded that if the prices in question are not governed by Revised Price Schedule No. 83, they are governed by the Maximum Import Price Regulation.

▮ Inasmuch as the validity of the order issued under Revised Price Schedule No. 83 is dependent on the correctness of the Administrator's interpretation of the price schedule as applicable to sales by Electromatic of the radios assembled and completed in Cuba, the question of interpretation of the Regulation is properly before this court. Conklin Pen Co. v. Bowles, Em.App., 1946, 152 F.2d 764.

The Administrator insists that the maximum price of the radios in question should be determined in accordance with Revised Price Schedule No. 83.

Section 1336.51 of the aforesaid Schedule provides: "On and after February 9, 1942, regardless of the terms of any contract of sale or purchase, or other commitment, no manufacturer shall sell, offer to sell, deliver or transfer any radio receiving set * * * at a price higher than the maximum price." Section 1336.60(a) (2) defines a manufacturer, as used in Revised Price Schedule No. 83, as follows: " 'Manufacturer' means any person regularly engaged in the manufacture or assembly of radio receiving sets or phonographs * * *." The Administrator contends that, since complainant, Electromatic Dis-

tributors, Inc., is a manufacturer regularly engaged in the manufacture or assembly of radio receiving sets, it cannot sell or deliver any radio receiving set, except at the maximum prices established by Revised Price Schedule No. 83.

In answer to these claims, complainant replies that it is not a manufacturer within the reasonable intendment of the foregoing sections of Revised Price Schedule No. 83. It contends that the radios assembled and completed in Cuba, which it received in shipments to New York, were imported radio receiving sets, and that it acted as a wholesaler or jobber in the sale of such sets in the United States. It submits that, because it was not a manufacturer of such sets, but rather a wholesaler or jobber of the imported sets, the maximum prices therefor were not governed by Revised Price Schedule No. 83.

The Maximum Import Price Regulation, in Section 2(a), provides: "This Regulation, except for Section 1, applies only to purchases and sales of the following commodities imported after March 31, 1942, which, were it not for this Regulation, would be governed by the General Maximum Price Regulation." Radios were listed among the commodities to which the Regulation applied.

But the Maximum Import Price Regulation only applies in the event that Revised Price Schedule No. 83, does not apply—under which circumstances the General Maximum Price Regulation would apply, except for the Import Regulation, as expressed in the language of the Regulation. Whether Revised Price Schedule No. 83 applies to complainant's sales depends upon whether complainant became subject to it as a "manufacturer," within the reasonable meaning of that term as defined in such schedule. For all such manufacturers are subject to Revised Price Schedule No. 83. If complainant was such a manufacturer, it comes under that schedule; if it was not such a manufacturer, its prices are governed by the Maximum Import Price Regulation.

Complainant argues that, since the Schedule provides that "no manufacturer shall sell * * * any radio receiving set * * * at a price higher than the maximum price," the only fair meaning to be given to this provision is that "manufacturer" as therein used, refers to the person who manufactures the radio receiving set, and that the language should be construed to the effect that no manufacturer shall sell any radio receiving set made by him at a price higher than the maximum price provided for by Revised Price Schedule No. 83. Furthermore, it is submitted that the definition of "manufacturer" set forth in the schedule as "any person regularly engaged in the manufacture or assembly of radio receiving sets" only emphasizes the fact that the schedule was concerned with sales by a person of the products of his own manufacture.

In support of complainant's contention, it appears that the Administrator has, in his official actions and interpretations in the past, practically adopted the views here advanced by the complainant. On April 10, 1942, the General Electric Co. filed a petition with the Administrator requesting that Revised Price Schedule No. 83 be amended so as to recognize the functional distinction between the operations of the petitioner's distributing branches, and the factory itself. The petitioner had asserted that the schedule worked a hardship upon it because it applied to the company's distributing branch, whereas it did not apply to independent distributors. That claim is very similar to the one now advanced, in that complainant contends that the sales governed by the Revised Price Schedule No. 83 should be deemed to apply only to sales by manufacturers, "as such." Upon the above mentioned petition of the General Electric Co., the Administrator amended Revised Price Schedule No. 83, setting forth, in his statement of considerations, accompanying the amendment, the following: "The Schedules (Nos. 83 and 84) covered 'manufacturers.' *It was intended that they should apply only to sales by a manufacturer as such.* In order that manufacturers' distributing branches may be treated in the same manner as distributors, the term 'manufacturer' as used in both Schedules is redefined as set forth in the accompanying amendment." (Emphasis supplied.)

The amendment (Amendment 3 to Revised Price Schedule No. 83) provides: "'Manufacturer' means any person regularly engaged in the manufacture or assembly of radio receiving sets or phonographs, *but does not include a factory branch or subsidiary performing the function of a distributor or wholesaler*." (Emphasis supplied.)

Not only, then, was it explicitly declared by the Administrator in his statement of considerations that Revised Price Schedule No. 83 was intended to apply only to sales of a manufacturer as such, but it was clearly recognized by the Administrator that in the radio industry, as distinguished from other industries, a different level of prices should prevail for sales *by the same company,* according to whether it made the sale as a manufacturer, or as a distributor.

■ In the case before us, it is contended by complainant that Revised Price Schedule No. 83 applies only to sales of a manufacturer as such. The Administrator, in his statement of considerations above mentioned, made findings to this effect. His present position disregards and contradicts the findings which he made in the statement of considerations accompanying Amendment No. 3 to Revised Price Schedule No. 83. The Administrator is, of course, bound by the definitions contained in the regulations. Moreover, the statutory basis and the legal justification for the issuance of a regulation is the statement of considerations. Allied Foods, Inc., v. Bowles, Em. App., 1945, 151 F.2d 449. But, of course, it is also to be remarked that, "when the validity of a regulation is brought into question, there is nothing in the Act to preclude the Administrator from advancing on their merits additional considerations designed to show that the challenged provisions are reasonably adapted to effectuating the statutory purposes." Ebling Brewing Co. v. Porter, Em.App., 1946, 156 F.2d 1012, 1020. In any event the Administrator is certainly bound by his findings as set forth in the statement of considerations, and cannot here be heard to deny or avoid his prior findings in promulgating the schedule in question or the amendments thereto, in an attempt to defeat complainant's contentions in this case.

But the Administrator asserts: "If complainant were able to show that it became a factory branch, or distributor or wholesaler selling its own radios in the United States, (it) would get out from under the definition of manufacturer," within the meaning of that term as defined in Revised Price Schedule No. 83, amended by Amendment 3. We do not consider that it is necessary for complainant to show that it was a factory branch, or distributor, or wholesaler, selling its own radios, in order to avoid being classified as a manufacturer under Revised Price Schedule No. 83. The fact that it was therein stated that the term, "manufacturer," did not include a factory branch or subsidiary performing the function of a distributor or wholesaler obviously resulted from the petition that was filed by General Electric Co. expressly requesting an amendment recognizing "the functional distinction between operations of distributing branches and the factory itself." But the statement of considerations upon which the amendment was thereafter promulgated explicitly, stated that although Revised Price Schedule No. 83 covered sales by manufacturers, "it was intended that (it) should apply only to sales by a manufacturer *as such.*" (Emphasis supplied.) The fact that the amendment set forth that the term, "manufacturer," did not include a factory branch or subsidiary performing the functions of a distributor or wholesaler could not be taken to mean that the term "manufacturer" as used in the schedule included every other department of a manufacturing concern or any manufacturer selling radios even though such articles were manufactured by another concern. That was expressly negatived by the statement of considerations already adverted to. We agree with the argument of complainant's counsel that Amendment 3 to Revised Price Schedule No. 83 was adopted in order to make certain that a distributing branch of a company would not be considered a manufacturer of the radios which it sells, even though those radios were manufactured by the very company of which it is a part; and that, a fortiori, complainant clearly cannot be considered subject to Revised Price Schedule No. 83, when it sells radios

manufactured by a different corporation. It is also pertinent to note that in the interpretation of regulations, the Administrator has, on another occasion, held that a company may perform a function as a manufacturer in one transaction, while in another, it may serve as a wholesaler, and that where such a manufacturer had a price line of its own, it could buy from other manufacturers and sell such purchased articles at a different price line than was determined for its own products. In the matter of The Richman Brothers Co., V Op. and Dec. OPA (Pike and Fischer) 118.

The Administrator's primary contention is that any manufacturer who sells radios, even though they are manufactured by another concern, falls within the definition of manufacturer, as set forth in Revised Price Schedule No. 83. Because this is contrary to the findings set forth in the Administrator's statement of considerations heretofore mentioned, as well as violative of the understanding and practice in the entire radio industry, and, furthermore, is not required by a reasonable construction of the language of the Revised Price Schedule as amended, we disagree with the Administrator's conclusions.

Whether a person is to be deemed a manufacturer in respect to pricing a particular radio must—in keeping with the Administrator's statement of considerations above referred to—depend upon whether he manufactures that particular radio. Furthermore, in case he manufactures and sells certain radios, and wholesales others, he is to be deemed a manufacturer of the items which he manufactures, and a jobber of those which he does not manufacture. Consonant with this principle, the maximum prices of such a seller will be fixed as a manufacturer, or a jobber, respectively.

Complainant's contention that, in the sales of radios assembled and completed in Cuba, it was not selling as a manufacturer within the meaning of Revised Price Schedule No. 83, is consistent, from every point of view, with the Administrator's findings on this subject, as disclosed in his statement of considerations. Since complainant does not come within the classi-

fication of a manufacturer as defined in the schedule, its sales are not covered by Revised Price Schedule No. 83, but by the Maximum Import Price Regulation. Accordingly, Order No. 8, entered by the Administrator establishing the prices of the radio sets in question, under Revised Price Schedule No. 83, was invalid and void, and should be set aside from the date of its issuance.

Certain other of the Administrator's contentions, however, should be mentioned. It is claimed that the radios assembled and completed in Cuba were radios actually manufactured by complainant; that they were not "imported" into the United States by complainant; that they always belonged to complainant; that they, therefore, could not be considered as radios manufactured by another concern, sold by complainant as a wholesaler, or in any other capacity; and that the sales of such radios by complainant in the United States were sales by a manufacturer "as such," and, therefore, governed by Revised Price Schedule No. 83. The foregoing was, for the most part, incorporated in the findings of the Board of Review, and largely formed the basis of the Administrator's opinion and order. They were all conclusions arrived at by a devious process of ratiocination but lose a otherwise have because of the fact that certain persuasiveness which they might they are supported by no evidence in the case. In fact, the evidence is entirely to the contrary.

It is conceded that, under the authority of Collins et al. v. Fleming, Em.App., 1947, 159 F.2d 431, complainant partners of Radio Traders were entitled to the revocation of the order which they had protested. Such revocation was made by the Administrator, and on the hearing in this case, it was agreed by counsel for the Administrator that if any uncertainty existed concerning its application, it was to be understood that such prior order was revoked, retroactively as of the date of its issuance.

In accordance with the foregoing a judgment will be entered declaring invalid and void from the date of its issuance, Order

No. 8, issued under Revised Price Schedule No. 83, and dismissing the complaint as to Aida Siegel, Sylvia Ehrlich and Olga Hauser, individually and as copartners doing business as Radio Traders.