## SENDEROWITZ et al. v. CLARK.
### No. 377.

United States Emergency Court of Appeals.

Heard at Philadelphia, Feb. 14, 1947.

Decided June 30, 1947.

Albert I. Schmalholz, of New York City (William J. Mahon, of New York City, on the brief), for complainants.

William R. Ming, Jr., Associate Gen. Counsel, of Washington, D. C. (Carl A. Auerbach, Gen. Counsel, Samuel M. Singer, and Irving J. Helman, Attys., all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MARIS, Chief Judge.

The complainants are manufacturers of men's and boys' underwear and shorts. From the inception of price control and throughout the period involved in this complaint sales of their commodity were subject to the General Maximum Price Regu-

lation.[1] On August 1, 1944 they reported to the Office of Price Administration that pursuant to Section 1499.3(b) (1) of the GMPR they had computed the maximum prices of their men's shorts style 259 to be $2.839 per dozen and style 467 to be $3.-1619 per dozen. On October 20, 1944 the Regional Administrator issued Order No. 112 pursuant to Section 1499.3(e) of the GMPR adjusting the ceiling price for style 259 to $1.50 per dozen and for style 467 to $1.60 per dozen so as to bring them into line with the level of maximum prices established under the GMPR. On May 8, 1945 the Regional Administrator issued Amendment 1 to Order No. 112. It recited that "Although the Order [No. 112] did not in specific terms state that the modified prices were your maximum prices from the date when you first offered the commodities for sale down to the date of your report, viz., August 1, 1944, such was the intent and purport of the order.", and that the maximum prices specified in Order No. 112 were applicable to sales made "prior to August 1, 1944, and subsequent to October 20, 1944,".

On July 14, 1944, which was prior to the complainants' report to the Price Administrator, the Price Administrator had instituted an action in the United States District Court for the Eastern District of Pennsylvania seeking to enjoin the complainants from further violations of the General Maximum Price Regulation and to recover damages for alleged overceiling sales of men's shorts in the period between July 13, 1943 and July 14, 1944, among them being styles 259 and 467. The Price Administrator offered in evidence Order No. 112 as amended by Amendment 1 as proof of the legal maximum prices for styles 259 and 467. The district court granted the injunction and allowed damages for the sales of men's shorts other than the two styles just mentioned. However, it dismissed the complaint in so far as it was based upon sales of styles 259 and 467, being of the opinion that since Order No. 112 which established maximum prices for these styles was not issued until after the complaint had been filed the complaint stated no cause of action as to the sales of that commodity. The Circuit Court of Appeals reversed, holding that for the purposes of the enforcement action Order No. 112 as amended must be treated as valid and applied retroactively in accordance with its terms and that any attack upon its validity must be made in the Emergency Court of Appeals. Porter v. Senderowitz, 3 Cir., 1946, 158 F.2d 435, certiorari denied 1947, 67 S.Ct. 1091.

By protest filed September 18, 1945 and while the enforcement action was still awaiting disposition in the district court the complainants attacked the validity of Order No. 112 as originally issued and as amended by Amendment No. 1. They also attacked the validity of the General Maximum Price Regulation and the Emergency Price Control Act as it affected them. The protest was denied and this complaint was filed under Section 204(a) of the Act, 50 U.S.C.A.Appendix, § 924(a).

The complainants contend that the Price Administrator had no power under the General Maximum Price Regulation to issue Order No. 112 revising downward their maximum prices. It is, therefore, necessary to examine the pertinent provisions of the GMPR to ascertain what authority, if any, was conferred upon the Price Administrator to issue the Order here under attack.

The GMPR provided for several pricing procedures. Section 1499.2 utilizes the freeze method of pricing. Thus Section 1499.2(a) established the maximum price in terms of the highest price charged by the individual seller for the same or similar commodity during March, 1942. Section 1499.2(b) provided that if a seller had made no sales in March, 1942 his maximum price would be the highest price charged during March, 1942 by the "most closely competitive seller of the same class" for the same or most similar commodity. Commodities which cannot be priced under Section

[1] 7 F.R. 3153 issued April 28, 1942, and effective May 11, 1942. The GMPR was superseded with respect to men's shorts by Maximum Price Regulation No. 605, issued December 13, 1945 and effective January 1, 1946 (10 F.R. 15115).

1499.2 are to be priced under Section 1499.3.

Subparagraph (b) of Section 1499.3,[2] which deals with sales other than at wholesale or retail originally read: "(b) In the case of a sale other than at wholesale or retail of a commodity, the maximum price shall be a price determined by the seller after specific authorization from the Office of Price Administration. A seller who seeks an authorization to determine a maximum price under the provisions of this paragraph shall file with the Office of Price Administration in Washington, D. C., an application setting forth (1) a description in detail of the commodity for which a maximum price is sought; and (2) a statement of the facts which differentiate such commodity from other commodities delivered during March 1942 by such seller and by other competitive sellers of the same class. Such authorization will be given in the form of an order prescribing a method of determining the maximum price for the applicant or for sellers of the commodity generally, including purchasers for resale, or for a class of such sellers."

Following Amendment 54[3] the seller no longer had to apply to the Price Administrator for a method of determining his maximum prices under Section 1499.3 since the formula to be used was set forth in the regulation.

Thus Section 1499.3(b) (1) provided:

"(b) In the case of a sale, other than at wholesale or retail, of a commodity for which a maximum price or pricing method has not been specifically authorized by the Office of Price Administration,

"(1) The seller (i) shall select a comparable commodity for which a maximum price has been established under § 1499.2(a) (1) of this regulation; (ii) shall divide his maximum price for the comparable commodity by its current direct cost; and (iii) multiply the percentage so obtained by the current direct cost of the commodity being priced. All customary discounts, trade practices, and practices relating to the payment of transportation charges in effect

with respect to the sale of the comparable commodity shall apply to such maximum price."

Amendment 61[4] amended 1499.3(b) (1) so that it read:

"(b) In the case of a sale other than at wholesale or retail of a commodity:

"(1) The seller shall (i) find the most comparable commodity for which he then has a maximum price under § 1499.2(a) (1); (ii) divide this price by the current unit direct cost of such commodity; and (iii) multiply the percentage so obtained by his current unit direct cost for the commodity being priced. The resulting figure shall be his maximum price for the commodity. All customary allowances, discounts, or other pricing differentials and all practices relating to the payment of transportation charges in effect with respect to the most comparable commodity shall apply to the commodity being priced."

The complainants assert that their styles 259 and 467 could not be priced under Section 1499.2 since neither they nor their close competitors sold the same or a similar commodity during March, 1942, that they selected a comparable commodity and properly applied the formula in Section 1499.3 (b) (1) so as to arrive at their own legal maximum prices for the two styles in issue. They contend that the Price Administrator had no power to revise these prices for the purpose of bringing them in line with the level of prices under the GMPR. We cannot agree.

The first and basic provision of Section 1499.3, which is found in its opening paragraph, read as follows: "The seller's maximum price for a commodity or service which cannot be priced under § 1499.2 of this General Maximum Price Regulation shall be a maximum price in line with the level of maximum prices established by this General Maximum Price Regulation. Such price shall be determined by the seller in accordance with the following procedures:"

The first change in the opening paragraph was made by Amendment 61[5] so that

---

[2] 8 F.R. 3096, 3097.

[3] Issued May 24, 1943 and effective May 29, 1943. 8 F.R. 6962.

[4] Issued May 13, 1944 and effective June 1, 1944. 9 F.R. 5169, 5170.

[5] Issued May 13, 1944 and effective June 1, 1944. 9 F.R. 5169.

thereafter it read: "A seller's maximum price for a commodity or service which cannot be priced under § 1499.2 and for which a maximum price or pricing method has not been otherwise established by the Office of Price Administration shall be a maximum price in line with the level of maximum prices established by this regulation and shall be determined in the following manner:"

■ It is clear from the opening paragraph of Section 1499.3 of the GMPR that the overriding consideration in pricing commodities under the section was that the prices should be in line with the level of prices for the commodity established by the regulation.

As Section 1499.3(b) read before Amendment 54 it was unnecessary for the Price Administrator to revise the maximum prices to bring them in line because he had already had the opportunity to take that factor into consideration before issuing his order upon the application of the seller for a method of determining the maximum price for the commodity involved.

After Amendment 54 had substituted for the application procedure the procedure of having each seller calculate his own maximum prices by the use of a general formula Section 1499.3(b) (1) provided that: "Within ten days after determining a maximum price under this subparagraph (1), the seller shall report such price to the appropriate field office of the Office of Price Administration upon a form, duly filled out, copied from the form contained in Appendix C of this regulation. The price so reported shall be subject to adjustment at any time by the Office of Price Administration."

This right to adjust the maximum prices necessarily includes the right to do so for the purpose highlighted by the opening paragraph namely, to bring all prices in line with the level of prices established by the regulation.

Amendment 61 added paragraph (e) to Section 1499.3 and leaves no possible doubt as to the power of the Price Administrator to make the adjustments. It reads: "(e) (1) The Price Administrator, or any Regional Administrator or any State or District Director so authorized by his Regional Administrator, may at any time approve, disapprove or revise maximum prices reported, proposed or established under paragraphs (a), (b) (1), or (c) of this section so as to bring them into line with the level of maximum prices otherwise established by this regulation."

We conclude that at all times of significance to these complainants[6] the Price Administrator had the power under the regulation to revise the maximum prices as calculated by the seller by the use of the formula in Section 1499.3(b) (1) so as to bring them into line with the level of prices established by the regulation.

■■ The complainants' contention that the order is invalid because the maximum prices established therein are arbitrary or capricious as to amount is, we think, also without merit. The affidavits incorporated in the transcript amply sustain the Price Administrator's conclusions that there is a level of prices on men's shorts, that the prices reported by the complainants for styles 259 and 467 are above that level and that the prices established in the order are reasonably in line with the level of prices for the commodity. The conflicting evidence submitted by the complainants upon the factual issue was considered by the Price Administrator and resolved against the complainants. This was wholly within his province. Rabkin v. Bowles, Em.App., 1944, 143 F.2d 600; Lee v. Fleming, Em. App., 1946, 158 F.2d 984.

■ We conclude that had Order No. 112 established maximum prices for sales after October 20, 1944, the date of its issuance, it would have been unobjectionable. The order, however, was intended by the Price Administrator to establish maximum prices for all sales made prior to the date of the complainants' report of August, 1944 as well as for sales made after the issuance of the order. This brings us to the in-

---

[6] The district court found that styles 259 and 467 were sold at overceiling prices from March, 1943, to April, 1944 inclusive. The period involved in the complaint was July 13, 1943 to July 14, 1944.

quiry whether after the sales have been completed and an enforcement proceeding is pending Order No. 112 is valid for the purpose of establishing retroactively the legal maximum prices to be applied in the pending enforcement action.

In Collins v. Fleming, Em.App., 1947, 159 F.2d 431, certiorari denied 1947, 67 S.Ct. 1094, we held that the Price Administrator may not by an order directed solely to that end determine the ceiling prices applicable to particular past sales which are the subject of an enforcement suit brought by him in a district court where one of the issues before the court is the amount of the proper ceiling prices applicable to the sale. It was our view that by instituting the enforcement suit the Price Administrator had committed the question to the district court and that he was without power through the medium of a retroactive price order to make a determination of the question committed to the court. We held that neither the regulation nor the Act authorized such an order. We think this decision is determinative of the issue now before us.

The Price Administrator calls attention to the fact that in the Collins case no application for an order establishing maximum prices was ever made, whereas these complainants did file a report and that in the Collins case the order expressly stated that it was for use in the enforcement action, whereas the maximum prices which were established by Order No. 112 were established without such a limitation. These factual differences, however, do not make the ruling in Collins v. Fleming inapplicable. The report in the present case was not filed until the enforcement proceeding had in fact been instituted. Moreover we are here concerned with the validity of Order No. 112 only in so far as it is made retroactive for the purpose of determining the legal maximum prices for those sales for which treble damages are sought by the Price Administrator in the enforcement proceeding. The Collins decision has no bearing upon the issue as to what prices might legally be charged for sales not involved in the enforcement proceeding. We think that upon the issue before us the situations are indistinguishable.

The Circuit Court of Appeals for the Third Circuit has ruled that the complaint filed by the Price Administrator in the United States District Court for the Eastern District of Pennsylvania in which the Price Administrator sought treble damages for sales by complainants of men's shorts styles 259 and 467 at over ceiling prices did state a cause of action and has remanded the cause for further proceedings. In that action the Price Administrator cannot rely upon Order No. 112 as irrebuttable evidence of the legal maximum prices for those sales. For we hold that the rule announced in Collins v. Fleming, Em.App., 1947, 159 F.2d 431, certiorari denied 1947, 67 S.Ct. 1094 renders Order No. 112 invalid to the extent that it is sought to be applied retroactively in this case. Accordingly, we have no occasion to pass upon the question whether the GMPR empowered the Price Administrator under other circumstances retroactively to adjust a maximum price computed by a seller under Section 1499.3 (b) (1) of the regulation.

A judgment will be entered declaring that Order No. 112, as amended, is invalid in so far as it purports to establish maximum prices for sales made by the complainants prior to August 1, 1944, the date of the filing of the report by the complainants.

MAGRUDER, Judge (concurring).

I agree with the court's conclusion that Order No. 112, as amended, is invalid in so far as it purports to make a retroactive determination of the applicable dollars-and-cents maximum prices for sales already executed prior to the issuance of the order. I add some comments of my own only because I think the opinion of the court may leave an erroneous impression of our view as to the issues left for decision in the District Court in the pending enforcement action, now that Order No. 112 is out of the way.

The crucial provision of the regulation, for the period now in question, is GMPR § 1499.3, as amended by Amendment 54. 8 F.R. 6962. The introductory paragraph of § 1499.3 makes the general statement that a seller's maximum price for a commodity which cannot be priced under the preced-

ing section "shall be a maximum price in line with the level of maximum prices established by this General Maximum Price Regulation. Such price [i. e., the seller's maximum price for a commodity which cannot be priced under the preceding section] shall be determined by the seller in accordance with the following procedures * * *" Later follows § 1499.3(b) (1), which gives a specific formula, apparently applicable to complainants at the time they made the sales now in question, for determining their maximum price. The seller was at liberty to go ahead and sell at that price if correctly computed by following the specific formula; he was not required to withhold a sale until such price was reported to and approved by the Price Administrator. A price correctly computed according to the formula in § 1499.3(b) (1) would normally be an in-line price. In exceptional cases, however, because of the existence of factors which need not now be explained in detail, a correct application of the special formula set forth in § 1499.3(b) (1) might produce an out-of-line price. In any case where this discrepancy existed, it seems to me the applicable maximum price would not be a "price in line with the level of maximum prices established by this General Maximum Price Regulation." The specific direction in § 1499.3(b) (1) would prevail over the more general formula stated in the introductory paragraph of § 1499.3. The price, arrived at by a correct computation under § 1499.3(b) (1), would become the maximum price, whether or not it happened to be out of line with the general level of maximum prices established by the regulation.[1]

Amendment 54 did provide that, within 10 days after "determining a maximum price" under § 1499.3(b) (1), the seller shall report such price to the appropriate field office of the OPA upon a prescribed form; and that the price so reported "shall be subject to adjustment at any time" by the OPA. I agree with the opinion of the court that this authorized the Price Administrator by subsequent order to reduce a maximum price, correctly computed under § 1499.3(b) (1), in cases where the application of that special formula produced an out-of-line price. But the regulation did not specifically reserve to the Price Administrator the power to make any such adjustment order retroactive, to cover past sales, whether or not the reporting provision had been complied with on time. In the Statement of Considerations accompanying the issuance of Amendment 54, the Price Administrator said: "Adjustments in reported prices may be made by the Office of Price Administration, but they will not apply retroactively."[2] The seller ought not to gain by a failure to make a timely compliance with the reporting provision; but it seems to have been a casus omissus in the regulation. In this respect the regulation is in marked contrast with the Rent Regulation for Housing. The rent regulation provides that, in the case of new housing accommodations first rented after the effective date of the regulation, the landlord's self-determined "first rent" shall become the maximum rent, subject to subsequent reduction by the Price Administrator to the level of the rents generally prevailing on the maximum rent date for comparable accommodations in the defense-rental area. There is also a reporting requirement in the rent regulation; but in that regulation the Price Administrator specifically reserves the power to make a subsequent reduction to the level of comparability retroactive if the landlord fails to comply with the reporting requirement, that is, fails to file a registration statement within 30 days after the first renting. See 150 East 47th Street Corp. v. Creedon, Em.App., 1947, 162 F.2d 206.

Since the applicable provision of the GMPR did not confer upon the Price Administrator power to adjust retroactively an out-of-line price correctly computed under § 1499.3(b) (1), Order No. 112, issued un-

---

[1] That such was the Price Administrator's original intention is perhaps made even clearer by the fact that the Price Administrator, in Amendment 61, inserted in § 1499.3(b) (1), just after setting forth the mathematical procedure for computing the price, the following sentence: "The resulting figure shall be his maximum price for the commodity." 9 F.R. 5170.

[2] Quoted in Porter v. Senderowitz, 3 Cir., 1946, 158 F.2d 435, 439, fn. 9.

der such regulation, is "not in accordance with law" in so far as it purported to be retroactive. The regulation is "law", binding not only upon sellers, but also upon the Price Administrator in his administration of an adjustment provision contained in the regulation. Therefore, it does not seem to me to make any difference whether Order No. 112 was issued before or after the enforcement suit was filed in the District Court; though, strictly, we are not now called upon to decide whether Order 112 would have been valid retroactively if it had been issued before the enforcement suit was filed.

This court will have fully performed its allotted function when it enters its judgment declaring that Order No. 112, as amended, is invalid in so far as it purports to be retroactive. The effect of our judgment will be to knock Order No. 112 out of the pending enforcement suit in the District Court. But we do not have the further function to interpret the regulation so as to determine what is the applicable formula for computing complainants' maximum prices. The opinion of the court states that, from the opening paragraph of § 1499.3 of the GMPR, it is clear "that the overriding consideration in pricing commodities under the section was that the prices should be in line with the level of prices for the commodity established by the regulation." That, together with the court's reliance upon Collins v. Fleming, Em.App., 159 F.2d 431, might be taken to imply that, in determining whether complainants made sales in excess of their ceiling price, the District Court must apply this general in-line formula instead of the specific formula prescribed in § 1499.3(b) (1). I do not think that the court means to decide this point, nor do I think it is presented for our decision. From the provisions of the regulation above set forth, it would seem to me that complainants' maximum price is the price correctly computed by the application of the special formula in § 1499.3(b) (1) until changed by subsequent valid order by the Price Administrator. That certainly would be the case if complainants had made a timely compliance with the reporting provision in the regulation. I think it would be a very strained interpretation of the regulation to hold that, after the expiration of the 10-day period, if no report is made, the seller's maximum price ceases to be the price correctly computed in accordance with the special formula of § 1499.3(b) (1) and becomes that price which is in line with the general level of prices established by the regulation as stated in the more generalized formula in the preliminary paragraph of that section. However, I think this question of interpretation is for the District Court, unembarrassed by anything we might say or imply. In my view it is for the District Court to decide (1) whether, upon a correct interpretation of the regulation, complainants' maximum price is to be computed by the application of the special formula in § 1499.3(b) (1) or under the more general in-line formula; (2) as a matter of fact, what is complainants' maximum price computed by the application of the proper formula; and (3) whether complainants made sales at prices in excess of their maximum price so computed.