**CITY ICE DELIVERY CO. et al. v. BOWLES, Price Administrator.**

No. 179.

United States Emergency Court of Appeals. Heard at Dallas April 6, 1945.

Decided June 29, 1945.

Preston A. Weatherred and W. B. Harrell, both of Dallas, Tex., for complainants.

Theodore E. Frossard, of Dallas, Tex. (Richard H. Field, Gen. Counsel, Nathaniel L. Nathanson, Associate Gen. Counsel, J. D. Hyman, Chief, Court Review Price Branch, and Josephine H. Klein, Atty., all of Washington, D. C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

Complainants claim to be aggrieved by an order of the Price Administrator issued October 4, 1944, denying their joint protest against Order G-1 issued by the Regional Administrator of Region V which establishes maximum prices for bottles of beer sold in eating or drinking establishments for consumption on the premises.

Each of the nine joint complainants operates, in one or more of four Texas cities, Dallas, Houston, San Antonio, and Fort Worth, what are locally known as "ice houses". Originally these were refrigerated stations located at various points throughout the city from which cash-and-carry deliveries of ice were made to domestic and small commercial users. Gradually the competition of mechanical refrigeration cut into the volume of sales of ice from these neighborhood stations. As a result, the operators began to sell from these stations, in addition to ice, various food and beverage items ready for immediate consumption, either on or off the premises, without change in form or additional preparation. Among such items were sandwiches, pies, cakes, ice cream, milk, soft drinks, and beer. In fact, beer has become one of the most popular items

dispensed at these stations, complainants having sold in this manner approximately a million cases of beer in 1944. Sales are made only of refrigerated beer, usually in quantities not exceeding a half dozen bottles.

These "ice houses", or neighborhood stations, do not furnish the ordinary services supplied in restaurants or drinking establishments, such as tables and chairs, waitresses, bars, glasses, ash trays, etc. They do, generally, have parking spaces which customers may occupy if they wish to consume their purchases on the premises. Also, the stations have licenses for on-premise consumption of beer, and complainants estimate that about 20 per cent of the beer purchased is consumed on the premises, the balance being taken by customers for consumption either at home or at nearby places of work or recreation. Historically, complainants have made no differential in price dependent upon whether the beer was consumed on the premises or elsewhere.

Complainants' sales of beer were first put under price control on April 28, 1942, by the General Maximum Price Regulation (7 F.R. 3153), which established maximum prices on an individual freeze basis at the highest prices charged by the seller during March, 1942. Complainants' ceiling prices under this regulation were 15 cents per bottle for the so-called premium beers and 10 cents per bottle for other brands. On November 2, 1942, the Administrator issued Maximum Price Regulation No. 259 —Domestic Malt Beverages (7 F.R. 8950), which superseded GMPR as to bottled beer and froze prices of such beer at the amounts charged either during the period October 1–15, 1941, or in March, 1942, plus certain permitted increases to cover newly imposed taxes. Under MPR 259, complainants' maximum prices became, generally, 16 cents per bottle for premium beers and 11 cents per bottle for other brands.

General Order No. 50 (8 F.R. 4808), issued by the Administrator on April 12, 1943, authorized each Regional Administrator to issue orders "establishing maximum prices for meals, food items and beverages". "Food item" was defined in the Order as follows: "(3) 'Food item' means an article or portion of food (including beverages) sold or served by an eating or drinking place for consumption in or about the place or to be taken out for eating

without change in form or additional preparation."

Acting under this delegated authority, the Regional Administrator for Region V (which includes Texas) issued his Order G-1 (9 F.R. 7796), which is the subject of challenge in the present proceedings. This order established maximum prices for malt beverages only, when sold or offered for sale at retail by any eating or drinking establishment for consumption on the premises. Eating and drinking establishments were divided into three groups based on their respective maximum prices for beer under MPR 259 during the period April 4–10, 1943, and maximum prices were prescribed for each group at the average level of the ceilings under MPR 259. The specific provisions of Order G-1 against which complainants filed their protest are the following:

"Section 17. Definitions—

* * * * *

"(d) 'Eating or drinking establishment' shall include any place, establishment, or location, whether temporary or permanent, in which any prepared food item or meal, or any beverage is sold for 'consumption on the premises.' Sales of malt beverages by grocery stores, ice houses, and other eating or drinking establishments for consumption off the premises shall not be subject to this order, but shall remain subject to the applicable Maximum Price Regulation.

"(e) 'Consumption on the premises' as applied to sales of malt beverages means any sale of malt beverage 'on draught,' or any sale of bottled malt beverage when the container is opened by the seller, or opened on or about the seller's premises."

Under Order G-1, complainants' prices for 12-ounce bottled beer became 18 cents per bottle for the premium beers and 13 cents per bottle for the other brands, in case of sales for "consumption on the premises" as defined above. The order did not deal with maximum prices for beer sold for consumption off the premises, but left such sales to be governed, as theretofore, by the provisions of MPR 259. Thus the effect of the order, so far as it went, was to the advantage of complainants in

that it raised their maximum prices two cents per bottle in respect to some of their sales, namely, sales for consumption on the premises. Complainants do not assert that the prices so established are not generally fair and equitable; indeed, what they appear to be after is to be allowed to charge the same prices of 18 cents and 13 cents per bottle for all their sales, whether for consumption on or off the premises.

■ But the maximum prices for sales of beer for consumption off the premises are governed by MPR 259, against which complainants have filed no protest; and it seems that complainants are not now in a position to challenge in this court the prices established by MPR 259, when protest to the Administrator was made only against certain provisions of Order G-1, which granted increases in maximum prices applicable to sales for consumption on the premises. Cf. Buka Coal Co. v. Brown, 1943, Em.App., 133 F.2d 949.

■■ Apart from this possible technical difficulty, complainants' case fails for they did not present in the protest proceedings any evidence tending to show that the prices established by MPR 259 were not generally fair and equitable. Cf. Gillespie-Rogers-Pyatt Co. v. Bowles, 1944, Em.App., 144 F.2d 361. Nor was it shown that these complainants were unable to realize a fair margin of profit under such maximum prices. The belated effort, in their reply brief, to supply this deficiency in their case comes too late to enable us to consider the validity of the maximum prices provided by MPR 259 applicable to beer sold for consumption off the premises.[1]

■ Complainants contend that Order G-1 issued by the Regional Administrator is invalid as being in excess of the authority delegated to him by the Administrator under General Order No. 50. The argument is that, as the beer sold by complainants is chilled and thus ready for immediate consumption without additional preparation, the Regional Administrator had no authority to make a distinction based on whether the sale was for con-

[1] After the present complaint was filed, the Administrator, on December 12, 1944, issued Revised Maximum Price Regulation No. 259 (9 F.R. 14537), which modified the pricing formula and, according to complainants, reduced some-
what their maximum prices of beer applicable to sales for consumption off the premises. We cannot consider in this proceeding any question as to the effect or validity of RMPR 259.

123

sumption on or off the premises. As above stated, General Order No. 50 authorized the Regional Administrators to establish maximum prices for "food items", defined as meaning "an article or portion of food (including beverages) sold or served by an eating or drinking place for consumption in or about the place or to be taken out for eating without change in form or additional preparation." Under this authorization, the Regional Administrator undoubtedly could have established maximum prices for such food items, whether sold for consumption on the premises or off the premises. He chose, however, in Order G-1 to establish maximum prices for beer only as applied to sales for consumption on the premises; and thus, as the Administrator rightly points out, the Regional Administrator did not exceed his authority but, rather, exercised only a portion of the authority delegated to him. Furthermore, as the Administrator demonstrates in his opinion accompanying his order denying the protest, if there were any doubt as to the authority of the Regional Administrator to issue Order G-1, the Administrator, in subsequent amendments to regulations not now necessary to set forth, fully ratified what the Regional Administrator had done.

■ The effect of Order G-1, in conjunction with MPR 259, is to maintain historic price differentials for bottled beer depending upon the type of sale, whether for consumption on or off the premises. It can hardly be contended that a differential of this sort is arbitrary or capricious. The usual incidental services rendered by eating or drinking places to patrons who do their eating or drinking on the premises justify a higher price than that applicable to a mere sale of the same item of food or drink for consumption elsewhere.

Complainants most strenuously object that, as their type of business is conducted, it is wholly impracticable to administer the price differential since, when a customer comes into the ice house to buy a bottle of beer, the seller does not know (except upon the buyer's say-so) whether the buyer is going to drink the beer "on or about the seller's premises" or elsewhere. Historically, the complainants have not cared which the buyer did; the price was the same in either case.

We can see readily enough that complainants are faced with some irritating practical difficulties in collecting the extra two cents per bottle when they are entitled to it under Order G-1, namely, when the sale is for "consumption on the premises" as defined in the Order. But, so far as appears, the differential based upon the two types of sale is generally fair and equitable and workable enough as applied to the ordinary types of what would popularly be described as eating or drinking establishments. Complainants' difficulty comes from the fact that the Regional Administrator really stretched a point in including these ice houses in the category of "eating or drinking establishments" in so far as the beer sold there is consumed on or about the premises, for, as above pointed out, complainants do not furnish the usual services rendered by eating and drinking establishments to patrons who consume their food and drink on the premises. The mere chilling of the beer certainly would not warrant a differential of two cents per bottle over the price permitted to grocery stores for the sale of unrefrigerated beer under MPR 259.[2]

■ There is no substance to a subsidiary objection by complainants that the regulation protested, in so far as it results in a price differential based upon the type of sale, operates to compel a change in business practices contrary to Section 2(h) of the Emergency Price Control Act, 50 U.S.C.A.Appendix § 902(h). Complainants are not required to charge the extra two cents on the 20 per cent of their sales in which the beer is consumed on the premises. See Safeway Stores, Inc. v. Bowles, 1944, Em.App., 145 F.2d 836, 840, certiorari denied 1945, 65 S.Ct. 684.

A judgment will be entered dismissing the complaint.

[2] The Administrator properly observes in his brief: "Since Complainants state that their maximum prices under Maximum Price Regulation No. 259 are the same as those of grocery stores selling unchilled beer, it appears clear that Complainants' historical single price was in-line with the level of 'package store' prices, rather than those of restaurants."