152 F.2d 764 (1946)
CONKLIN PEN CO.
v.
BOWLES, Price Administrator.
No. 243.
United States Emergency Court of Appeals.
Heard November 30, 1945.
Decided January 11, 1946.
*765 Jack H. Oppenheim, of Chicago, Ill., for complainant.
Jacob D. Hyman, Associate Gen. Counsel, of Washington, D. C. (Richard H. Field, Gen. Counsel, Josephine H. Klein, and Louis L. Rochmes, Attys., all of the Office of Price Administration, all of Washington, D. C., on the brief), for respondent.
Before MARIS, Chief Judge, and McALLISTER and LINDLEY, Judges.
Heard at Chicago November 30, 1945.
MARIS, Chief Judge.
The individual members of the complainant partnership have been doing business as the Conklin Pen Company since October 1, 1941. From the time of the issuance of the General Maximum Price Regulation[1] the complainant determined the ceiling prices of the fountain pens and mechanical pencils which it sold by the application of the March, 1942, freeze date method prescribed by that regulation.
The three styles of fountain pens and the fountain pen and mechanical pencil set herein involved are fabricated by the Paramount Pen Company and the Novelty Pen Company. The complainant supplies these companies with gold pen points, which it procures from another source, to be inserted in the fountain pens. No part of the mechanical pencils is supplied by the complainant. Paramount and Novelty sell the fountain pens to the complainant complete and ready for use.
On January 8, 1944, the Price Administrator notified the complainant by telegram that its prices for the four items here involved should be established in accordance with the fourth pricing method provided by Maximum Price Regulation 188  Manufacturers' Maximum Prices for Specified Building Materials and Consumers' Goods other than Apparel.[2] On January 25, 1944, the complainant requested the Administrator to supply it with "price determination" for the four items. The Administrator issued Order No. 1617[3] under Section 1499.158 of MPR 188 on May 18, 1944. This order established maximum prices for the complainant for the sale of each of the four items. The complainant is described in the order as the manufacturer.
On October 27, 1944, the Administrator issued Maximum Price Regulation 564  Fountain Pens and Mechanical Pencils.[4] The complainant is listed in a table of retail ceiling prices found in Section 23 of this regulation as the manufacturer of three of the four items covered by Order No. 1617. The complainant filed its protest against MPR 188 and Order No. 1617 on December 9, 1944. It has not filed a protest against MPR 564. On June 1, 1945, the Administrator dismissed the protest. The complaint in this court followed.
The complainant asserts that MPR 188, if properly interpreted, does not apply to manufacturers of fountain pens and mechanical pencils. It also urges that if interpreted to be applicable to such manufacturers, as the Administrator has construed it, the regulation is invalid for a number of reasons which it specifies. The Administrator urges that this court is not at liberty under these circumstances to determine for itself the proper construction of the regulation but must adopt his interpretation of it. There is thus raised a fundamental question of the judicial power of this court in cases coming to it upon the denial of a protest by the Administrator.
The Administrator's theory is that in a protest proceeding before him under Section *766 203 of the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 923, the protestant must accept the interpretation which the Administrator has placed upon the protested regulation and may only raise in his protest objections directed to its validity when so interpreted. It follows, he says, that in a complaint filed under Section 204(a) of the Act, 50 U.S.C.A.Appendix, § 924(a), following the denial of a protest, the complainant may only raise and this court may only consider questions as to the validity of the regulation interpreted as it has been by the Administrator, and that the question whether the regulation has been properly interpreted as applicable to the complainant may not be raised or considered.
We do not think that the protest and review procedure of the Act may be thus restricted. It is true that we have said that mere questions of interpretation of the Administrator's regulations and orders are ordinarily not cognizable in this court. Marlene Linens v. Bowles, Em.App. 1944, 144 F.2d 874; Veillette v. Bowles, Em.App.1945, 150 F.2d 862. To this view we adhere. But where, as in this case, a protestant to whom a regulation has been construed by the Administrator to be applicable, asserts that if applied to him the regulation is invalid and at the same time contends that properly construed it is inapplicable to him, we think that he has the right to have the question of the proper meaning and interpretation of the protested regulation passed on in the protest proceedings and on review in this court. He is not compelled, as the Administrator suggests, to elect whether to assume the applicability of the regulation and attack its validity in a protest proceeding or to assume its validity and attack its applicability in a declaratory or enforcement proceeding.
A case filed in this court under Section 204(a) is a judicial review of the Administrator's action in denying the protest. It would be strange indeed if in such a proceeding the reviewing court were bound by the determination of the officer whose action is being reviewed as to the meaning of his regulation or order. For those acts have the force of law and their construction involves a question of law just as much as does the interpretation of a statute. Moreover, it is a question which may involve the standing of the complainant to maintain his suit. It is for these reasons that this court has held that in such a case we have power to determine whether the regulation under attack may fairly be interpreted as applying to the complainant before we decide the questions of validity which he raises. Alan Levin Foundation v. Bowles, Em.App.1945, 152 F.2d 467.
A case brought to this court under Section 204(e) (1) of the Act is in quite a different category. Such a case is not in any true sense an appeal from an action of the Price Administrator but, on the contrary, is merely ancillary to another suit which has been brought against the complainant in another court. In such a case the jurisdiction of the Emergency Court of Appeals is invoked by the complainant only with leave of the court in which the litigation is pending. It is invoked primarily for the purpose of enabling the complainant to establish the invalidity of the regulation involved in that litigation as a defense to be presented in that court. See Section 204(e) (2) of the Act. Except for the prohibition of Section 204(d) the defense could and would have been established in the primary court. But the complainant still has full opportunity to raise in that court the question of the applicability of the regulation to him and have it there judicially decided. Accordingly we have held in such a case that this court will accept the construction which the enforcement court has placed upon the regulation in question and will consider merely its validity as thus interpreted. Collins v. Bowles, Em.App.1946, 152 F.2d 760.
We therefore pass to the consideration of the question whether MPR 188 may fairly be interpreted as applicable to manufacturers of fountain pens and mechanical pencils. The complainant in urging that it does not apply to it points to the fact that by Amendment No. 10, effective April 5, 1943[5] the definition of "manufacturer", contained in Section 1499.163(a) (3) of the regulation was amended to read:
"`Manufacturer' means the person who makes the first sale of an article listed in Appendix A (§ 1499.166) of this regulation after the article has been completed to the point indicated by the terminology of the appendix."
The complainant properly points out that the regulation applies only to sales by manufacturers who come within the terms of *767 this definition. It asserts that manufacturers of fountain pens and mechanical pencils do not come within the purview of the definition because there is no terminology in Appendix A of the regulation which indicates the stage at which the manufacture of these articles is to be deemed to have been completed for the purposes of the regulation. Indeed, Appendix A of the regulation does not so much as mention fountain pens or mechanical pencils or refer to them in any way.
We think that the complainant's contention is unanswerable and that MPR 188 may not fairly be interpreted as applicable to sales by manufacturers of fountain pens and mechanical pencils. Consequently it becomes unnecessary for us to consider the questions raised by the complainant as to the validity of that regulation when applied to such articles. We accordingly turn to the consideration of the complainant's attack upon Order No. 1617.
Order No. 1617 purports to establish maximum prices for the complainant as a manufacturer of fountain pens and mechanical pencils. It was issued by the Administrator under the authority of Section 1499.158 of MPR 188. That section provides, as a fourth pricing method for the manufacturers of articles which the regulation covers, the fixing by the Administrator of an in-line price for a particular manufacturer by an order issued for the purpose. It will thus be seen that Order No. 1617 was based upon the premise that MPR 188 was applicable to manufacturers of fountain pens and mechanical pencils and was issued to implement the regulation in its application to them. Since as we have seen MPR 188, properly interpreted, does not apply to manufacturers of fountain pens and mechanical pencils, it necessarily follows that Order No. 1617 has no actual basis for support in the regulation upon which it purports to be based and must be held to be capricious and invalid.
Paragraph (b) of Order No. 1617 does not aid it. That paragraph provides:
"The maximum prices established by this order for sales by the manufacturer are for all sales and deliveries of the fountain pens and fountain pen and mechanical pencil set from the time that those articles became subject to Maximum Price Regulation No. 188."
The Administrator suggests that in issuing Order No. 1617 he assumed that MPR 188 applied to fountain pens and mechanical pencils but that if he was wrong paragraph (b) suspended the operation of the order until such time as those articles should be brought under the regulation. We think this contention is untenable, however. The entire order, including paragraph (b), involved more than an assumption that MPR 188 was applicable. It amounted to a determination that the regulation, properly interpreted, covered the articles. The reference in paragraph (b) is to the past. Its evident purpose was to restrict the retroactive effect of the order to those past sales only which had taken place after the articles in question had become subject to the regulation. It obviously assumed that this event had taken place prior to the issuance of the order and that all future sales of such articles were to be subject to the order in any event.
What has been said makes clear that the objection raised to Order No. 1617 involves more than the mere determination of its effective date which, as the Administrator suggests, would be cognizable by the district court. For it involves the validity of a price order which by its terms imposes a ceiling price upon sales by the complainant of its fountain pens and mechanical pencils and which the Administrator intended should have that effect.
The Administrator says that whatever may have been the defects of MPR 188 and Order No. 1617, those defects were corrected and cured by the issuance of MPR 564 on October 27, 1944, which was prior to the filing of the complainant's protest. Accordingly, he says, that protest was untimely under the rule laid down by this court in Thomas Paper Stock Co. v. Bowles, Em.App.1945, 148 F.2d 831, and therefore does not furnish support for the complaint in this court. It thus becomes necessary for us to ascertain the effect of MPR 564 with respect to the questions raised in this case.
MPR 564 covers fountain pens and mechanical pencils and establishes maximum prices for sales at wholesale and at retail. When it comes to sales by manufacturers, however, Section 3 of the regulation provides as follows:
"All provisions of Maximum Price Regulation No. 188 shall continue to apply to manufacturers of fountain pens and mechanical *768 pencils, except as they may be modified by this regulation. Manufacturers must therefore continue to determine their maximum prices under Maximum Price Regulation No. 188."
It will thus be seen that MPR 564 does not attempt to establish maximum prices for manufacturers of fountain pens and mechanical pencils. It assumes, just as Order No. 1617 assumed, that MPR 188 applies to such manufacturers and it states that MPR 188 shall continue to apply to them. But, as we have said, MPR 188 properly interpreted never did apply to them and does not apply to them now. Accordingly MPR 564 could cure the invalidity of Order No. 1617 only if it amended MPR 188 so as to make that regulation in fact apply to manufacturers of fountain pens and mechanical pencils. This, however, it does not purport to do. On the contrary it leaves MPR 188 and Order No. 1617 in exactly the same position in which it found them. They remain applicable to manufacturers of fountain pens and mechanical pencils only if and to the extent that they may fairly be construed as thus applicable.
We have shown that MPR 188 is not so applicable. Order No. 1617, however, is by its terms applicable to such a manufacturer, the complainant, and as so applied was invalid for the reasons already given. Since this invalidity was not corrected by MPR 564, the complainant's protest against the order was timely and we have power to entertain the complaint based upon the dismissal of the protest.
A judgment will be entered setting aside Order No. 1617.
NOTES
[1] 7 F R 3153, issued April 28, 1942.
[2] 7 F R 5872, issued July 29, 1942 and effective August 1, 1942.
[3] 9 F R 5389.
[4] 9 F R 12920.
[5] 8 F R 4140.