**DUNHAM & REID, Inc., et al. v. PORTER.**

**No. 355.**

United States Emergency Court of Appeals.

Heard at New York Oct. 18, 1946.

Decided Nov. 5, 1946.

J. Almyk Lieberman, of New York City, for complainants.

Carl A. Auerbach, Associate General Counsel, of Washington, D. C. (Richard H. Field, General Counsel, William R. Ming, Jr., Chief, Court Review Price Branch and Louis L. Rochmes, all of Washington, D. C., and Homer Hilton, Jr., of New York City, Attys., all of Office of Price Administration, on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MARIS, Chief Judge.

The sole question involved in this case is whether a common carrier is subject to price control under the Emergency Price Control Act, 50 U.S.C.A.Appendix, § 901 et seq., with respect to transportation services the rates for which are not regulated by other state or federal authorities. The complainants are common carriers of household goods by motor vehicle who have received certificates of public convenience and necessity to operate as such from the Interstate Commerce Commission and the Public Service Commission of the State of New York. Neither commission, however, has established rates for the complainants' operations within the New York Commercial Zone. Maximum prices for their services in that zone have been established by the Price Administrator by Amendment No. 74 to Revised Supplementary Regulation No. 11, issued March 18, 1946,[1] and Order No. 2 under the same regulation, issued March 26, 1946.[2] It is this regulation as thus amended and implemented that the complainants seek to have set aside as invalid.

Sec. 302(c) of the Emergency Price Control Act provides, inter alia, that "nothing in this Act shall be construed to authorize the regulation of * * * (2) rates charged by any common carrier or other public utility." Since the exempting clause by its terms applies to all common carriers without exception and since the complainants are admittedly common carriers it would seem inevitably to follow that they are exempt from price control by the express terms of the act. The Administrator urges, however, that the exempting clause is not to be given its plain meaning

---

[1] 11 F.R. 2993.

[2] 11 F.R. 3279.

but must be limited to those common carriers only whose rates are regulated by other federal or state authorities. This result, he says, is compelled by the decision of the Supreme Court in Davies Warehouse Co. v. Bowles, 1944, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635.

In the Davies Warehouse case the question involved was whether a public warehouse which by California law was declared to be a public utility and subject to rate regulation as such was in the class of "other public utilities" within the meaning of the exempting clause of Section 302(c) of the Emergency Price Control Act. This court had held that the exempting clause referred only to businesses generally and traditionally regarded as public utilities, irrespective of whether their rates were otherwise regulated, and that a public warehouse was not such a business. 137 F.2d 201. The Supreme Court, however, held that the clause extended to any business classified by the state in which it operated as a public utility and regulated as such. The court accordingly held the Davies Warehouse Company to be exempt from regulation by the Price Administrator. The court expressly left open the question whether the exemption included a "conventional [public] utility not subject to a state regulatory statute or subject only to partial regulation." 231 U.S. 144, 156, 64 S.Ct. 474, 481.

It will be seen that the question involved in the Davies Warehouse case was the meaning of the term "other public utilities" which, as the court said, "wears an appearance of precision which proves illusory when exact application becomes necessary." 321 U.S. 144, 147, 64 S.Ct. 474, 477. Here, however, we are concerned with the meaning of "common carriers", a term of art the content of which from the time of early common law has been clear and definite. Its application accordingly does not present any such difficulty. It is quite understandable why, in order to carry out the Congressional intent, the inclusive though nebulous term "other public utilities" must be read broadly as including any business classified by the law of its state as a public utility and regulated as such. But it is impossible for us to see how an intention can be attributed to Congress, when it used the term "common carriers" without limiting words, to have that term nonetheless read in the limited sense for which the Administrator contends. Certainly nothing decided in the Davies Warehouse case calls for such a construction.

We think that to construe the term "common carriers" in the exempting clause as though it read "common carriers whose rates are otherwise regulated" would be to amend the statute under the guise of construing it. We are quite aware of the Administrator's contention that this construction is necessary in order to make certain that all common carriers will be subject either to federal price control or to state or federal rate regulation. This may be and doubtless is a desirable objective which it is within the power of Congress to achieve. But the argument should be addressed to Congress and not to us. For the language which Congress actually used in Section 302(c) was not designed to accomplish that result and we do not think that it may fairly be tortured into doing so.

We conclude that the complainants are exempt from price control by the Administrator with respect to all their operations as common carriers including those in the New York Commercial Zone which are not presently subject to any other rate regulation.

A judgment will be entered setting aside Revised Supplementary Regulation No. 11 as amended by Amendment No. 74 and implemented by Order No. 2 in so far as it imposes upon the complainants maximum prices for services rendered by them as common carriers.