76

SCHWALB et al. v. TURNEY, Director, Division of Liquidation, Department of Commerce.

No. 458.

United States Emergency Court of Appeals.
Heard at San Francisco June 12, 1948.
Decided Oct. 15, 1948.

Francis McCarty, of San Francisco, Cal. (Ben K. Lerer, of San Francisco, Cal., on the brief), for complainants.

Israel Convisser, Atty., Department of Justice, of Washington, D.C. (Tom C. Clark, Atty. Gen., T. Vincent Quinn, Asst. Atty. Gen., and Floyd L. Cook and Charles G. Mulligan, Attys., Department of Justice, both of Washington, D.C., on the brief), for respondent.

Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.

MAGRUDER, Judge.

Robert D. Schwalb and Joe Lapkin are copartners engaged in business at San Francisco, California, as wholesalers of electric appliances, under the firm name Schwalb-Lapkin Company (formerly Arma Distributing Company). In this complaint, filed under § 204(a) of the Emergency Price Control Act, as amended, 50 U.S.C.A.Appendix, § 924(a), they claimed to be aggrieved by the order of the Director, Division of Liquidation, Department of Commerce, issued November 19, 1947, denying in greater part their protest against pricing orders theretofore issued by the Office of Price Administration. The cause has not been rendered moot by the termination of price controls, because there was filed on August 1, 1945, and is still pending, in the District Court of the United States, Northern District of California, Southern Division, a civil complaint against Schwalb and Lapkin for treble damages for alleged sales of electric stoves at prices in excess of the applicable maximum prices.

The first order which was protested was Order G-27 (10 F.R. 6282) issued by the OPA Regional Administrator for Region VIII, under the authority of § 1499.3(e) (2) of the General Maximum Price Regulation (9 F.R. 1385, 5170). This order which by its terms became effective May 22, 1945, prescribed, without reference to particular sellers, maximum prices of $0.85 and $1.50, respectively, for certain single burner and two burner electric stoves described in the order, applicable to sales to retailers in California and other parts of the region by all persons other than manufacturers. Sales were apparently made by complainants of the commodities in question after May 22, 1945, the effective date of Order G-27, at prices in excess of those established by the order.

Complainants also made sales of one burner and two burner electric stoves prior to May 22, 1945, during a period when there

was not in effect any specific dollars-and-cents pricing order applicable to such commodities. Before that date, complainants were subject to the provisions of the General Maximum Price Regulation. This was a freeze regulation, the base period of which was the month of March, 1942. GMPR prescribed automatic pricing methods by which most sellers could determine their own maximum prices. Wholesalers who could not determine a maximum price by such automatic pricing methods were required by GMPR § 1499.3(c) (9 F.R. 5170) to apply to the District Office of the OPA for approval of a proposed maximum price, which price had to be "in line with the level of maximum prices established by this regulation".

On December 12, 1945, which was subsequent to the filing of the aforesaid enforcement suit for treble damages, complainants, under the name of Arma Distributing Company, filed with the District Director, pursuant to GMPR § 1499.3(c), an application seeking approval of proposed maximum prices for their single burner and two burner electric stoves considerably higher than the regional maximum prices which had been established for these commodities, effective May 22, 1945, by Order G-27.

On January 4, 1946, the District Director, in response to such application, and pursuant to GMPR § 1499.3(c), issued Order No. 183 which specifically established for complainants' single burner and two burner electric stoves the maximum prices at wholesale of $0.85 and $1.50, respectively, which were the same prices that had been established for such commodities by the more general regional Order G-27. Order No. 183, which was also protested, contained the following provision:

"This Order shall apply from the date of your first sale of the commodities for which maximum prices are established hereunder, and shall continue to govern such prices until the effective date of Order No. G-27 * * * from which time said Order No. G-27 shall be controlling."

Order No. 183 was therefore entirely retroactive in effect, and purported to cover sales during a past period involved in the pending enforcement suit. In this respect the case is reminiscent of Collins v. Fleming, Em.App.1947, 159 F.2d 431, certiorari denied 1947, 330 U.S. 850, 67 S.Ct. 1094, 91 L.Ed. 1293, and Senderowitz v. Clark, Em.App.1947, 162 F.2d 912, which cases respondent asserts are perhaps distinguishable, and if not he urges that they should be reconsidered by us.

Complainants' protest against Order No. G-27 and Order No. 183 was filed with the Office of Price Administration on April 7, 1946. The protest asserted that similar and comparable electric stoves sold by other wholesalers had maximum prices far in excess of those established by the protested orders, and that the prices requested in protestants' application were not out of line with prices of comparable articles otherwise established under the provisions of GMPR. An affidavit by Lapkin was submitted in support of the allegations in the protest. Affiant stated that he "knows of comparable products the prices of which have been set in excess of 200% of the prices set by Order No. G-27 and Order No. 183, the Orders protested, and affiant is informed and believes that there are no comparable products anywhere in the United States for which similar wholesale prices have been set or for which any prices have been set not in excess of 200% of the prices set by the foregoing Orders." Also, with the protest, and in support of it, protestants submitted to the OPA seven samples of stoves as physical exhibits, two of them being the single burner and double burner stoves sold by protestants, for which the protested orders had established prices of $0.85 and $1.50, respectively; the other five being comparable single burner or double burner stoves sold by other companies which, it was claimed, had much higher maximum prices established under GMPR.

Apparently the OPA took no action on the protest. On January 21, 1947, its successor, the Office of Temporary Controls, issued an order incorporating into the record an affidavit of Mr. Charles M. Gilbert, who had been Chief of the Hardware and Household Section of the Durable Goods Branch, Office of Price Administration,

and offering protestants an opportunity to present further evidence. Protestants submitted another affidavit by Lapkin, reciting much specific detail as to maximum prices of comparable articles. Affiant assumed that protestants' exhibits were still available for inspection, for, referring to one of the proffered comparables, he asserted: "An examination of the stove will reveal that, if anything, it is inferior to the stove under protest and has been granted an exceedingly higher price."

On October 16, 1947, the Division of Liquidation, Department of Commerce, which by that time had succeeded to the functions of the Office of Temporary Controls with reference to protests, issued an order giving notice that the protest would be considered by a Board of Review.

The Board of Review made its report on November 14, 1947. It expressed the view that the maximum prices set in the protested orders were "too low"; recommended that maximum prices of $1.08 and $2.63 be established for the protestants' single burner and double burner stoves, respectively, and beyond that that the protest be denied.

The Director, Division of Liquidation, issued his order on November 19, 1947, granting the protest in part and denying it otherwise, as recommended by the Board of Review. Thereafter the present complaint was duly filed in this court.

On January 31, 1948, complainants filed a request for an order directing respondent to deliver to the court their original exhibits which had accompanied the protest filed with the OPA. Respondent answered that he did not know the whereabouts of the exhibits, and that they "are not nor do they appear ever to have been in the possession or under the control of Respondent." We then issued an order directing respondent to institute an investigation as to the present whereabouts of the exhibits and to make a written report to the court thereon within thirty days. Pursuant thereto, respondent reported that only one of the exhibits had been found but that he was "unable to explain the whereabouts of the remaining six stoves other than to surmise that, through administrative error, these exhibits were disposed of to charitable institutions along with the hundreds of similar exhibits which had been received without request from the owner for their return." It was further stated that such disposition of physical exhibits had been commenced, pursuant to a liquidation program, on or about October, 1946, and that, on information and belief, "all samples and physical exhibits formerly held by the Office of Price Administration and its successor, Office of Temporary Controls, were fully disposed of prior to transfer of the Emergency Price Control functions to the Department of Commerce."

If it is true that the loss of these exhibits might have prejudiced complainants' case, it is too late now to repair the damage by remanding the case to respondent with direction to reopen the protest proceeding; for complainants cannot now procure other samples to replace the lost exhibits, and further search for the exhibits appears to be futile.

The only evidence incorporated into the record in support of the maximum prices fixed by the contested orders was the aforesaid affidavit by Mr. Gilbert. It is by no means clear from the record that Mr. Gilbert ever saw the exhibits of alleged comparable stoves which protestants had submitted with their protest. At any rate, it is conceded that they were never seen nor considered by the Board of Review, nor by respondent.

Since this evidence submitted in support of complainants' case has been lost by "administrative error", a heavy burden rests upon respondent to persuade us that, even if the exhibits had been available for inspection by the Board of Review and by respondent, they could not have affected the outcome of the case. It is true there is some confusion in the record as to what were the maximum prices established for these alleged comparables. We shall not rehearse the details, but we state our conclusion that respondent has not sustained the burden of convincing us that the loss of these exhibits could not have been prejudicial to complainants. As already stated, the Board of Review found the prices established in the protested orders to be somewhat "too low". We cannot say that the Board would not have recommended, and

that respondent would not have afforded, even a greater measure of relief if they had had before them the physical exhibits which protestants had submitted as their main reliance in support of the protest. Under the peculiar circumstances, we think the only fair and decent thing to do is to indulge every intendment in favor of complainants.

A judgment will be entered setting aside both of the protested orders.