193 F.2d 181
 FAST et al.
v.
DI SALLE, Director of Price Stabilization.
 No. 586.
 United States Emergency Court of Appeals
 Submitted November 23, 1951.
 Filed December 11, 1951.
 
 Frank G. Wittenberg and Katz, Wittenberg & Katz, all of New York City, for complainants.
 Holmes Baldridge, Asst. Atty. Gen., Edward H. Hickey, Chief, General Litigation Section, and George Arthur Fruit, Attorney, all of the Department of Justice, and Harold Leventhal, Chief Counsel, James A. Durham, and Abraham Hornstein, all of Washington, D. C., Attorneys, all of the Office of Price Stabilization, for respondent.
 Before MARIS, Chief Judge, and MAGRUDER, McALLISTER, LINDLEY and LAWS, Judges.
 MAGRUDER, Judge.
 
 
 1
 Abraham A. Fast and Jerome Fast, as partners doing business under the firm name of Metered Appliances Co., filed their complaint in this court under § 408(a) of the Defense Production Act of 1950, 64 Stat. 798, 50 U.S.C.A.Appendix, § 2108(a), claiming to be aggrieved by an order of the Director of Price Stabilization dismissing their protest purporting to have been filed pursuant to § 407(a) of said Act, 50 U.S.C.A.Appendix, § 2107(a). Respondent has moved to dismiss the complaint, on the ground that dismissal of the protest was proper because the protest was not against a regulation or "order relating to price controls" within the meaning of § 407(a) of the Act, and therefore that this court has no jurisdiction under § 408 to enjoin or set aside any administrative action. We think the point is well taken and that the complaint must be dismissed.
 
 
 2
 Complainants are engaged in the business of installing, servicing and operating coin-metered automatic clothes washing machines, driers and extractors in apartment or tenement houses in metropolitan New York, and as such are subject to Ceiling Price Regulation 34, 16 F.R. 4446, issued May 11, 1951, by the Director of Price Stabilization pursuant to the provisions of § 402 of the Act, 50 U.S.C.A.Appendix, § 2102, and to authority thereunder delegated to him by §§ 401 and 402 of Executive Order 10161, 15 F.R. 6105, 50 U. S.C.A.Appendix, § 2071 note, and Economic Stabilization Agency General Order No. 2, 16 F.R. 738.
 
 
 3
 In June, 1951, the district enforcement director in the New York regional office of the Director of Price Stabilization asked complainants for an explanation of certain alleged price increases, over and above their highest prices in force during the base period December 19, 1950, to January 25, 1951, inclusive. § 5 of CPR 34. Complainants replied by memorandum prepared by their attorneys setting forth the factual background, and asserting that the price increases were authorized by the terms of § 12 of CPR 34.
 
 
 4
 Mr. Sol A. Liebman, the district enforcement director, wrote to complainants' attorneys under date of July 2, 1951, disputing their contentions as to the application of § 12 of the regulation, and concluding with the following: "Under all the circumstances disclosed by our investigation, and by your memorandum, we do hereby request that you immediately take such steps as may be necessary to roll back the prices currently charged by your client in each of the houses in which the prices have been increased since January 25th to the highest price which existed between December 19, 1950 and January 25, 1951; that within five days from the receipt of this letter, you furnish us with a complete self-audit of all of the overcharges charged and collected by your client since January 25, 1951, and that you be good enough to arrange with your client to be present in this office relative to the above subject matter at 10:00 A. M., July 10, 1951."
 
 
 5
 On August 9, 1951, complainants filed a protest against what they termed the "order" of the Office of Price Stabilization contained in the above-quoted paragraph of the letter of July 2, 1951. By order issued August 24, 1951, the Director of Price Stabilization dismissed the protest, for the following stated reason:
 
 
 6
 "The aforesaid letter of July 2, 1951 is not, either in its terms or by its effect, an order. The letter merely `requests' Protestant to `take such steps as may be necessary' to comply with the aforesaid regulations and to `be good enough' to come to the office of the Enforcement Director to discuss the matter further. This is not an `order' within the contemplation either of Section 407(a) of the Defense Production Act of 1950, as amended, or of Price Procedural Regulation 1, revised. It therefore cannot form the subject matter of a protest.
 
 
 7
 "In essence, the letter constitutes a notification and warning to Protestant that it has been and is in violation of regulations of the Office of Price Stabilization. It is an act of courtesy and is not the necessary predicate of an enforcement proceeding. The proper forum for determining the question of whether Protestant has violated the regulations is a court in which the District Enforcement Director brings proceedings against Protestant for violation of the regulations. The jurisdiction of such court cannot be by-passed through the device of a protest."
 
 
 8
 It is clear that the letter of the district enforcement director is not and does not purport to be an order fixing, of its own force, complainants' maximum prices. It does not indeed appear that the district enforcement director has any delegated authority to issue pricing orders. The letter of July 2, 1951, is in effect no more than a statement by the enforcement officer that, as he interprets the applicable regulation, certain price increases made by complainants were illegal and that the complainants, in order to get back into compliance, will have to roll back their prices to those charged during the base period. If complainants prove to be correct in their interpretation of the regulation, their refusal to roll back prices as requested by the enforcement officer will not involve them in any liability.
 
 
 9
 Of course, if complainants do not acquiesce in the enforcement officer's interpretation of the regulation, they may subsequently find themselves faced with enforcement proceedings under § 409 of the Act. But complainants are quite wrong in supposing that in such event the enforcement court would be bound to assume the correctness and validity of the enforcement director's interpretation of the regulation. The enforcement court would have to make its own independent determination of a question of law, as to whether § 12 of the regulation, properly interpreted, authorized the price increases in question, for it is the function of the enforcement court to determine all questions of fact and law bearing on whether the regulation, as written, has been violated. There would remain open the possibility that complainants might obtain from the enforcement court, pursuant to § 408(e)(1) of the Defense Production Act, leave to file a complaint directly in the Emergency Court of Appeals seeking a determination of the validity of the regulation as interpreted by the enforcement court. See Collins v. Bowles, Em.App.1946, 152 F.2d 760, 761-762; Conklin Pen Co. v. Bowles, Em.App.1946, 152 F.2d 764, 765-766; Van der Loo v. Porter, Em.App.1946, 160 F.2d 110, 112 — cases dealing with the corresponding provisions of the Emergency Price Control Act of 1942, 50 U.S.C.A.Appendix, § 901 et seq.
 
 
 10
 This court, and the Supreme Court upon review of our judgments on certiorari, as provided in § 408(d) of the Defense Production Act, "have exclusive jurisdiction to determine the validity of any regulation or order relating to price controls" under Title IV of the Act. We have no jurisdiction as such to give declaratory judgments interpreting a price regulation. Only as incidental to the exercise of our jurisdiction to determine the validity of a regulation or order relating to price controls do we have any occasion to interpret the meaning of a regulation or to determine whether it is applicable to a particular person or class of persons. The same was true of our function under the closely corresponding provisions of the Emergency Price Control Act of 1942.
 
 
 11
 One instance where this court may have to determine the interpretation of a regulation is the following: A general price regulation may lay down a formula by which individual pricing orders are to be issued by some subordinate official of the Office of Price Stabilization to whom such authority is delegated. In such a case, if the subordinate official issues an individual pricing order which itself purports to determine a maximum price, this court would have exclusive jurisdiction to determine the validity of such individual pricing order. The jurisdiction of this court might be invoked either by the protest route under §§ 407(a) and 408(a) of the Defense Production Act, or, in case enforcement proceedings have been instituted, by a complaint filed with leave of the enforcement court granted under § 408(e)(1). The enforcement court would not have jurisdiction to determine the validity of the pricing order, but would have to assume its validity, in the absence of a determination by the Emergency Court of Appeals that the order was invalid. We, of course, in order to determine such validity, might have to interpret the underlying price regulation to see whether the pricing order was in conformity with the regulation; if it was not, then the pricing order would be set aside by us as not in accordance with law. See City Ice Delivery Co. v. Bowles, Em.App.1945, 150 F.2d 120; New Orleans Laundries, Inc. v. Porter, Em.App.1946, 157 F.2d 1013; Senderowitz v. Clark, Em.App.1947, 162 F.2d 912; Schwalb v. Turney, Em.App. 1948, 170 F.2d 76. But as we have already pointed out, the letter of the district enforcement director dated July 2, 1951, is not such an order establishing an individual maximum price.
 
 
 12
 This court also had occasion to pass incidentally upon questions of interpretation in another type of case which came before us under the Emergency Price Control Act and which presumably might be presented to us under the Defense Production Act of 1950, 50 U.S.C.A.Appendix, § 2061 et seq.; that is, where the administrative agency, upon one interpretation of a price regulation, claimed that a person had committed violations of it and threatened enforcement proceedings, whereas the seller claimed that under another interpretation, which he thought was the proper one, either the regulation was inapplicable to him or he was in conformity with it. We held that the seller in such a case was entitled by way of the protest procedure to attack the validity of the regulation as interpreted by the Administrator. In order for us to reach the question of validity, we had first to determine which of the conflicting interpretations was the correct one. If we found that the regulation meant what the administrative agency claimed it to mean, we would then proceed to determine its validity as so construed. If we found that it meant what complainant urged, we would then dismiss the complaint, for complainant was making no attack on the validity of the regulation as so construed. See Marlene Linens v. Bowles, Em.App.1944, 144 F.2d 874; Alan Levin Foundation v. Bowles, Em.App.1945, 152 F.2d 467, 470; Conklin Pen Co. v. Bowles, Em.App.1946, 152 F.2d 764, 765-766. Our interpretation of the regulation in such a case, whichever way we found, would presumably be res judicata as between the government and the seller, because such determination was a necessary preliminary to our judgment disposing of the complaint. See Collins v. Porter, 1946, 328 U.S. 46, 66 S.Ct. 893, 90 L.Ed. 1075; Fleet-Wing Corp. v. Clark, Em.App.1948, 166 F.2d 145.
 
 
 13
 In their answer to respondent's motion to dismiss, complainants have sought to bring themselves within the line of cases just cited by asserting that they protested, or intended to protest, not only against the alleged order contained in the district enforcement director's letter of July 2, 1951, but also against the validity of § 12 of CPR 34, on the ground that the regulation, if it means what the district enforcement director has interpreted it to mean, is invalid as failing to conform with the requirements of § 402(d)(1) of the Defense Production Act. But inspection of the protest reveals that complainants' protest was directed solely to the letter of July 2, 1951, and contained not even the hint of a challenge to the validity of any provision of CPR 34.
 
 
 14
 Our jurisdiction under § 408(a) of the Defense Production Act is explicitly limited to a determination of the validity of the particular regulation or order relating to price controls against which the protest was directed; and further, we may consider no objection to a protested regulation or order "unless such objection shall have been set forth by the complainant in the protest". This does not necessarily mean that the objection must be contained in the document called the "protest", if the objection was advanced in the course of the protest proceeding and was actually considered and disposed of on the merits by the administrative agency. In such a case, upon a complaint subsequently filed under § 408(a), we would proceed to consider the objection on the merits, treating it as if the administrative agency had allowed an informal amendment of the protest. But substantial compliance with the statutory provision is mandatory and jurisdictional. See Bowman v. Bowles, Em.App.1944, 140 F.2d 974, 977, discussing the rationale of the corresponding provisions of the Emergency Price Control Act prescribing the protest procedure as preliminary to judicial review.
 
 
 15
 In the present case no objection as to the validity of any provision of CPR 34 was raised in the protest proceedings; the protest was not directed against any "order" to which complaints were "subject" within the meaning of § 407(a) of the Act and § 31 of Price Procedural Regulation 1, Revised, 16 F.R. 4974; and the protest was properly dismissed pursuant to § 32 of said Procedural Regulation.
 
 
 16
 A judgment will be entered dismissing the complaint.