224 F.2d 284
 LAMBERT'S POINT DOCKS, Inc.
v.
Charles H. KENDALL, Assistant Director, Office of Defense Mobilization.
 No. 668.
 United States Emergency Court of Appeals.
 Heard at Washington, D. C., May 18, 1955.
 Decided June 28, 1955.
 
 W. R. Ashburn, Norfolk, Va., with whom Frank E. Sellers and Sellers & Underwood, Norfolk, Va., were on the brief for complainant.
 Katherine Hardwick Johnson, Attorney, Department of Justice, Washington, D. C., with whom Warren E. Burger, Asst. Atty. Gen., and Edward H. Hickey, Chief General Litigation Section, Department of Justice, Washington, D. C., and James A. Durham, Special Counsel, and Pauline B. Heller, Special Counsel, Office of Defense Mobilization, Washington, D. C., were on the brief for respondent.
 Before MARIS, Chief Judge, and MAGRUDER and McALLISTER, Judges.
 MAGRUDER, Judge.
 
 
 1
 Though it is to be regretted at this late stage in the proceeding, we are constrained to the conclusion that the complaint must be dismissed for lack of jurisdiction.
 
 
 2
 The case comes to us by direct complaint under § 408(d) (1) of the Defense Production Act of 1950, as amended, 66 Stat. 303, 50 U.S.C.A.Appendix, § 2108, pursuant to leave granted to complainant by order of a United States District Court. As provided in § 408(d) (1), such leave may be granted, under defined conditions, to file a complaint in the Emergency Court of Appeals challenging the validity of any provision of a price regulation which the defendant is charged in the enforcement court with having violated. Upon the due filing of such a complaint, the Emergency Court of Appeals is vested with exclusive jurisdiction to enjoin or set aside the provision of the regulation or order complained of or to dismiss the complaint. Obviously, therefore, the jurisdiction of this court on a complaint under § 408(d) (1) is strictly limited to a determination of the validity of the provision of the regulation or order which the defendant in the enforcement proceeding is charged with having violated; we cannot on such a complaint consider the validity of any other regulation or order of the Director of Price Stabilization even though the complaint filed in this court may ask us to do so.
 
 
 3
 Lambert's Point Docks, Inc., complainant herein, operates a marine terminal at Norfolk, Virginia, at which it is engaged in the furnishing to carriers by rail, water, and motor vehicle, of terminal, wharfage, loading and unloading services at fixed charges.
 
 
 4
 On June 26, 1952, the United States filed its complaint against Lambert's Point Docks Inc., in the United States District Court for the Eastern District of Virginia, Norfolk Division, to recover damages on account of overcharges for the terminal services alleged to have been made during the period June 1, 1951, to June 21, 1952, in violation of Ceiling Price Regulation 34 (16 F.R. 4446) issued May 11, 1951, effective five days later, by the Director of Price Stabilization under authority of the Defense Production Act.
 
 
 5
 Ceiling Price Regulation 34, which was a general freeze-type regulation of maximum charges for miscellaneous services, contained this provision (16 F.R. 4447):
 
 
 6
 "Sec. 2. Services covered. This regulation covers all services except:
 
 
 7
 "(a) Services exempted in the GCPR, as amended".
 
 
 8
 The general Ceiling Price Regulation, thus referred to, contained the following provision (16 F.R. 814):
 
 
 9
 "Sec. 14. Exemptions and exceptions. This regulation does not apply to the following:
 
 
 10
 * * * * * *
 
 
 11
 "(f) Rates charged by any common carrier or other public utility".
 
 
 12
 Under the statutory scheme, the court having an enforcement proceeding before it has the jurisdiction and the duty to determine all questions of fact or law bearing on whether the defendant therein is subject to the regulation as properly interpreted, and whether the defendant has violated the ceiling prices, if applicable. It is the special function of the Emergency Court of Appeals to pass on questions as to the validity of a price regulation or order; and it is merely as incidental to the performance of that special function that in certain situations we have occasion to interpret the meaning of the regulation or to determine whether it is applicable to a particular person or class of persons, as explained in Fast v. DiSalle, Em.App., 1951, 193 F.2d 181, 184, 185. Referring to § 204(e) of the Emergency Price Control Act of 1942, as amended, 58 Stat. 639, which was the provision of that Act corresponding to § 408(d) of the Defense Production Act of 1950, as amended, we said in Conklin Pen Co. v. Bowles, Em. App., 1946, 152 F.2d 764, 766:
 
 
 13
 "A case brought to this court under Section 204(e) (1) of the Act is in quite a different category [from a case brought under the protest procedure]. Such a case is not in any true sense an appeal from an action of the Price Administrator but, on the contrary, is merely ancillary to another suit which has been brought against the complainant in another court. In such a case the jurisdiction of the Emergency Court of Appeals is invoked by the complainant only with leave of the court in which the litigation is pending. It is invoked primarily for the purpose of enabling the complainant to establish the invalidity of the regulation involved in that litigation as a defense to be presented in that court. See Section 204(e) (2) of the Act. Except for the prohibition of Section 204(d) the defense could and would have been established in the primary court. But the complainant still has full opportunity to raise in that court the question of the applicability of the regulation to him and have it there judicially decided. Accordingly we have held in such a case that this court will accept the construction which the enforcement court has placed upon the regulation in question and will consider merely its validity as thus interpreted. Collins v. Bowles, Em. App., 1946, 152 F.2d 760."
 
 
 14
 It seems therefore clear that the United States District Court, before which the enforcement suit brought by the United States was pending, had the duty of interpreting CPR 34, which defendant Lambert's Point Docks, Inc., was charged with violating, to determine whether the defendant's charges at its marine terminal were subject to the regulation as written; and that would involve a determination whether the defendant was exempt as a "common carrier or other public utility" within the meaning of § 14 of the General Ceiling Price Regulation. Of course the United States, in the enforcement suit, has asserted that Lambert's Point Docks, Inc., is not a "public utility" within the meaning of the exemption; but the district court is not bound to assume the correctness of the interpretation of the regulation as asserted by the plaintiff in the enforcement action; a question of law is thus presented as to which the enforcement court would have to make its own independent determination. See Fast v. DiSalle, supra, 193 F.2d at page 184.
 
 
 15
 It so happens in this case that the exemption in the regulation was expressed in the exact terms of the exemption contained in § 402(e) (v) of the Defense Production Act of 1950, 64 Stat. 806, which provided that the price control authority conferred by the Act should not be exercised with respect to rates "charged by any common carrier or other public utility".[1] It must be assumed that the exemption provision of the regulation was intended to be coextensive with the statutory exemption; this, indeed, the respondent concedes. Therefore, the inquiry whether Lambert's Point Docks, Inc., is a "public utility" within the meaning of the regulatory exemption poses the identical issue that would be presented if the question to be decided were whether the company is a "public utility" within the meaning of the statutory exemption. But though this coincidence exists in the particular circumstances presented, it is nonetheless true that the United States District Court must necessarily make a judicial interpretation of the regulatory exemption, in its possible application to the defendant in the enforcement proceeding, before that court can properly give judgment holding the defendant liable in damages for having made overcharges in violation of the provisions of CPR 34. And if the defendant should claim that the judgment of the district court is erroneous in that respect, the point can be presented and determined on appeal to the Court of Appeals for the Fourth Circuit. Cf. Massy v. Kendall, Em.App., 1954, 209 F.2d 250; Massy v. United States, 8 Cir., 1954, 214 F.2d 935; Massy v. Kendall, Em.App., 1954, 217 F.2d 319. See also Bowles v. Chicago Cartage Co., D.C.N.D.Ill.1946, 71 F.Supp. 92, affirmed sub nom. Fleming v. Chicago Cartage Co., 7 Cir., 1947, 160 F.2d 992.
 
 
 16
 In the present case we gather from the complaint before us that the district court has never made any judicial interpretation of the regulatory exemption in order to determine whether the defendant's charges at its marine terminal were excluded by the regulation itself from the operation of CPR 34. Upon the contrary it appears that the district court acted upon the view, an erroneous one, we believe, that it had no power to determine this question of interpretation, since the Director of Price Stabilization, and the United States in the enforcement suit, had asserted that the defendant was not a "public utility" within the meaning of the exemption. Acting on this view, the district court entered a final judgment against defendant for damages, on the mere assumption that the defendant was subject to the regulation; and thereafter entered an order granting leave to the defendant to file its complaint in the Emergency Court of Appeals, asking us to pass on this question of interpretation. But we do not believe that the district court, by erroneously granting the defendant leave to file its complaint in our court, can confer upon us an interpretative function beyond our specifically limited statutory jurisdiction. So far as CPR 34 is concerned, that regulation was certainly valid on its face in the respect now in question, since it contained an exemption in the precise terms of the statutory exemption. Hence, we could not possibly, on this complaint, set aside, or declare invalid, as contrary to law, any provisions of CPR 34. In addition to challenging the validity of CPR 34, the complaint now before us, in a portion which we by earlier action allowed to stand, as against a motion by respondent to strike, seeks also to challenge the validity of Supplementary Regulation 14 to CPR 34, issued March 24, 1952 (17 F.R. 2564). Since the complaint in the enforcement suit charged the defendant only with a violation of CPR 34, we have no present jurisdiction to consider SR 14, for the reason above indicated. Furthermore, an inspection of SR 14 discloses that it can have no possible bearing on the present case. Supplementary Regulation 14 provided as follows:
 
 
 17
 "Section 1. What this regulation does. This regulation provides a means for establishing or adjusting on a group basis, uniform ceiling rates and charges for marine terminal companies operating under joint written agreements filed with the Federal Maritime Board pursuant to the provisions of section 15 of the Shipping Act of 1916, as amended.
 
 
 18
 "Sec. 2. Relationship to Ceiling Price Regulation 34. All provisions of Ceiling Price Regulation 34 applicable to marine terminal companies, except as changed by the provisions of this supplementary regulation, shall remain in full force and effect." (17 F.R. 2565.)
 
 
 19
 Complainant was not a party to any § 15 joint agreement. Section 2 of SR 14 did not make CPR 34 applicable to complainant unless it was already so applicable according to its terms. It is true, as complainant points out, that SR 14 contained the following language: "Except for certain stevedoring and carloading services which have been specifically exempted from price control, all marine terminal services are subject to price control, by the Office of Price Stabilization under the provisions of Ceiling Price Regulation 34, effective May 16, 1951." However, this sentence appeared at the outset of the "Statement of Considerations" that induced the issuance of SR 14, and was not a part of its operative "Regulatory Provisions". The sentence was no more than an interpretative assertion as to the meaning and application of CPR 34, to the effect that marine terminals were not deemed by the administrative agency to be "public utilities" within the meaning of the exemption.
 
 
 20
 After respondent filed its answer to the complaint in this court, respondent filed a motion to strike certain portions of the complaint without, however, suggesting that the complaint as a whole should be dismissed for lack of jurisdiction. By order entered May 20, 1954, we granted in part this motion to strike, but did not at that time focus on any possible jurisdictional question. Later we entered an order denying a motion by complainant for judgment in its favor on the pleadings. Lambert's Point Docks, Inc., v. Kendall, Em.App., 1954, 215 F.2d 455. After that we granted leave to complainant to introduce certain evidence in support of its complaint, which was done; and on May 18, 1955, we heard oral argument on the merits. It was only subsequent to the oral argument that we began, on our own initiative to inquire into the basis of our jurisdiction in the case.
 
 
 21
 At the earlier stages, we were lulled into an assumption of our jurisdiction to pass upon the question presented in the case (and no doubt the district court was similarly misled) by the fact that in two previous cases we did exercise jurisdiction to determine whether the complainants then before us fell within the meaning of the phrase "any common carrier or other public utility" as used in the statutory exemption. Davies Warehouse Co. v. Brown, Em.App., 1943, 137 F.2d 201, reversed 1944, 321 U.S. 144, 64 S.Ct. 474, 88 L.Ed. 635; Dunham & Reid, Inc., v. Porter, Em.App., 1946, 157 F.2d 1022. But in the Davies Warehouse Co. case the Price Administrator had not, as here, provided a regulatory exemption in the exact terms of the statutory exemption of "any common carrier or other public utility", but had, in the price regulation itself, undertaken to define the specific businesses which were to be subject to the price regulation notwithstanding the statutory exemption. By the conjoint effect of Supplementary Regulation No. 11 (7 F.R. 4543), and Amendment No. 1 thereto (7 F.R. 4738), the Price Administrator undertook specifically to subject to price control, on and after July 1, 1942, the rates charged by "Commercial Storage and warehousing and services incident thereto." Davies Warehouse Co. filed with the Price Administrator a timely protest against these regulatory provisions. Upon denial of its protest Davies Warehouse Co., claiming to be aggrieved thereby, filed its complaint in this court, pursuant to § 204(a) of the Emergency Price Control Act of 1942, asking us to set aside the challenged regulatory provisions as being contrary to law in that they were invalid under the statutory exemption in so far as they purported to regulate the charges of the complainant.[2] Accordingly there is no doubt that we had jurisdiction of the particular complaint in Davies Warehouse Co. v. Brown. The same is essentially true of the complaint we had before us in Dunham & Reid, Inc., v. Porter; it is unnecessary now to recite the facts of that case in greater detail.
 
 
 22
 A judgment will be entered dismissing the complaint for lack of jurisdiction.
 
 
 
 Notes:
 
 
 [1]
 By the Defense Production Act Amendments of 1952, which became law June 30, 1952, this particular statutory exemption was amended to include specifically "rates charged by any person subject to the Shipping Act, 1916 (Public Law 260, Sixty-fourth Congress), as amended", 66 Stat. 299, which made it clear that after the effective date of that amendment the rates charged by this marine terminal were no longer subject to regulation by the Director of Price Stabilization. But the amendment took effect several days after the end of the period during which Lambert's Point Docks, Inc., was charged in the enforcement suit with having violated CPR 34
 
 
 [2]
 It may be pertinent to note what would have been the situation if the present complaint had come to usvia the protest route, instead of by direct complaint under § 408(d) (1) of the Act pursuant to leave granted by the district court. As we pointed out in Fast v. DiSalle, Em. App., 1951, 193 F.2d 181, 184, where the administrative agency, upon one interpretation of a price regulation, claimed that a person had committed violations of it and threatened enforcement proceedings, whereas the person in question claimed that under another interpretation, which he thought was the proper one, the regulation was inapplicable to him, such person was entitled by way of the protest procedure to attack the validity of the regulation as interpreted by the administrative agency. Supposing, then, that the present complainant came to us in this way, we would necessarily dismiss the complaint if we concluded that complainant came within the regulatory exemption as a "public utility", for complainant would be making no attack upon the validity of the regulation as so construed. On the other hand, if we concluded that complainant was not a "public utility" within the meaning of the regulatory exemption, we would have to conclude, also, that the regulation, as so construed, was not contrary to the statutory exemption expressed in identical terms; and so, we would dismiss the complaint attacking the validity of the regulation. Thus, under either alternative, we would dismiss the complaint.